Alain V. SCURO, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 49A02–0505–CR–440.

Court of Appeals of Indiana.

June 21, 2006.

Teresa D. Harper, Bloomington, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Michael Gene Worden, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

BAKER, Judge.

Appellant-defendant Alain V. Scuro appeals from his convictions for Child Molesting,[1] a class A felony, Child Molesting,[2] a class C felony, and three counts of Dissemination of Matter Harmful to Minors,[3] a class D felony. Specifically, Scuro argues that: (1) the trial court erred in denying two of Scuro's juror challenges for cause during voir dire; (2) his convictions for three counts of dissemination of matter harmful to minors are improper because the statute does not permit multiple convictions when there was only one display of harmful materials, albeit to multiple victims; and (3) his conviction on one of the counts for dissemination of matter harmful to minors was improper because the verdict may have been returned by a non-unanimous jury.

Finding that the trial court properly denied Scuro's juror challenges but that Scuro should have only been convicted on one count of dissemination, we affirm in part, reverse in part, and remand with instructions to vacate Scuro's convictions on Counts V and VI.

### FACTS

In June 2004, Scuro lived in an Indianapolis apartment with Raymond Jacobs, who had a prior conviction for child molesting. During the time that Jacobs lived with Scuro, Jacobs molested several young boys. The molestations occurred primarily in a wooded area near to the apartment. Among the boys that Jacobs molested were D.D., W.C., and C.A. On one occasion, Jacobs met with D.D. at the apartment, introduced D.D. to Scuro, and had anal intercourse with D.D. in front of Scuro. Shortly thereafter, Scuro also began molesting D.D., who eventually brought C.A. and W.C. to the apartment. Scuro showed the boys pornographic movies and molested C.A.

The police eventually learned of the molestations, investigated the case, and arrested Jacobs and Scuro. On July 19, 2004, the State charged Scuro with two counts of class A felony child molesting (Counts I and II), one count of class B felony vicarious sexual gratification (Count III), one count of class C felony child molesting (Count IV), and three counts of class D felony dissemination of matter harmful to minors (Counts V–VII).

Scuro's jury trial began on March 14, 2005, and on March 15, the jury found Scuro guilty on Counts II, IV, V, VI, and

---

1. Ind.Code § 35–42–4–3.

2. *Id.*

3. Ind.Code § 35–49–3–3.

VII. On April 19, 2005, the trial court sentenced Scuro to thirty years on Count II, four years on Count VI, to be served concurrently with Count II, and to 545 days on each of Counts V through VII, with these sentences to be served concurrently with each other and consecutively to Count II, leading to an executed sentence of thirty years and 545 days of incarceration. Scuro now appeals.

## DISCUSSION AND DECISION

### I. Voir Dire

■■■ Scuro first argues that the trial court erred in denying his request to challenge two jurors for cause during voir dire. As we consider this argument, we observe that the decision whether to excuse a juror for cause rests within the sound discretion of the trial court. *McHenry v. State,* 820 N.E.2d 124, 127 (Ind.2005). We give the trial courts substantial deference in such matters because they are in the best position to assess the jurors' ability to serve without bias and to follow the law because the trial courts observe the prospective jurors firsthand. *Hyppolite v. State,* 774 N.E.2d 584, 597 (Ind.Ct.App.2002). Thus, we will reverse a trial court's decision regarding challenges for cause only where the decision is arbitrary or illogical and results in prejudice to the defendant. *Smith v. State,* 730 N.E.2d 705, 708 (Ind. 2000). Indeed, if a defendant uses a peremptory challenge to strike the problematic juror and does not complain that the use of this peremptory challenge prevented him from challenging another juror who was later seated, the defendant has not shown prejudice and any error will be found to be harmless. *Shane v. State,* 615 N.E.2d 425, 427 (Ind.1993).

■■■ Here, Scuro complains that the trial court denied two of his desired juror challenges for cause. But he struck both prospective jurors with peremptory challenges; thus, they did not serve on his panel. And although Scuro ultimately exhausted his peremptory challenges, he makes no argument that he was unable to peremptorily strike any other prospective jurors because he was obliged to use peremptory challenges on these two prospective jurors. Consequently, Scuro has not shown that he was prejudiced because of the trial court's denial of his challenges for cause. Thus, even if the trial court erred in denying the challenges for cause, it was harmless error.

### II. Multiple Dissemination Convictions

■■■ Scuro next argues that his convictions for three counts of dissemination of matter harmful to minors is improper because the relevant statute does not permit multiple convictions when there was only one display of harmful materials, albeit to multiple victims. This argument presents a matter of statutory interpretation, which is an issue of law warranting de novo review. *B.K.C. v. State,* 781 N.E.2d 1157, 1167 (Ind.Ct.App.2003). The relevant portion of Indiana Code section 35–49–3–3 provides as follows:

> (a) Except as provided in subsection (b), a person who knowingly or intentionally:
>
> \* \* \*
>
> (2) displays matter that is harmful to minors in an area to which minors have visual, auditory, or physical access, unless each minor is accompanied by the minor's parent or guardian;
>
> \* \* \*

commits a class D felony.

Here, Scuro was convicted for three separate counts under this provision of the statute—one for each of the three boys

who viewed pornographic movies shown to them by Scuro. All counts are arguably[4] based on the same occurrence when Scuro displayed the movies to the three boys simultaneously. Scuro argues that because the statute focuses on the "display" of the material rather than the harm to each minor who views it, the statute is intended to regulate only the display of the harmful matter without regard for the number of minors who view it.

Scuro directs us to *Kelly v. State*, 527 N.E.2d 1148 (Ind.Ct.App.1988), *summarily aff'd on trans.* 539 N.E.2d 25 (Ind. 1989), as support for his argument. In *Kelly*, we considered a defendant who was driving while intoxicated, causing an accident that resulted in the death of one person and the serious injury of another. Kelly was convicted of one count of operating a vehicle while intoxicated causing serious bodily injury and one count of operating a vehicle while intoxicated causing death. We held, based on the statutory language, that Kelly had committed only one offense, albeit with multiple results. At that time, the relevant statutes read as follows:

> A person who operates a vehicle while intoxicated commits a class A misdemeanor. Ind.Code § 9–11–2–2.[5]

> A person who violates [IC 9–11–2–2] commits a class D felony if the crime results in serious bodily injury to another person. I.C. § 9–11–2–4.[6]

> A person who violates [IC 9–11–2–2] commits a class C felony if the crime results in the death of another person. I.C. 9–11–2–5.[7]

We noted that in crimes such as murder and manslaughter, the result—causing the death or injury of another person—is part of the definition of the crime. We then contrasted the operating while intoxicated statutes to the result-oriented crimes:

> in defining the subject offense, *the legislature chose to use the result of serious bodily injury or death as a factor enhancing the punishment for the crime rather than as an aspect of the crime itself, i.e., as part of the definition of the crime.* IC 9–11–2–2 defines the crime as operating a vehicle while intoxicated. That definition consists of the prohibited conduct, operating a vehicle, and the presence of an attendant circumstance, intoxication. It does not include or require the necessary conduct produce a specific result. Thus, the crime is committed although no specific result occurs. This intent is irrebuttably evidenced by the language of IC 9–11–2–4 and 9–11–2–5 which identify the crime as a violation of IC 9–11–2–2: "A person who violates [IC 9–11–2–2] commits a class .... felony if the crime results in...." .... Thus, we are compelled to conclude Kelly committed only one offense of operating a vehicle while intoxicated although with multiple results. The multiple egregious results do not increase the number of crimes, only the penalty.

527 N.E.2d at 1155 (emphasis added). In other words, because the operating statutes focused on the prohibited conduct rather than the results of that conduct, multiple victims could increase the penalty but did not provide the basis for multiple

---

4. The State argues that the jury may have returned a guilty verdict on the dissemination charge with respect to D.D. based on a separate incident in which Scuro showed a pornographic video to D.D. when neither of the other boys was present. We will examine this contention more fully in Part III herein.

5. Now Ind.Code § 9–30–5–2.

6. Now I.C. § 9–30–5–4.

7. Now I.C. § 9–30–5–5.

convictions. *Id.* at 1155. Thus, we vacated Kelly's conviction for operating a vehicle while intoxicated causing serious bodily injury.

■ As in *Kelly,* the dissemination statute at issue herein is conduct-rather than result-oriented. Specifically, it focuses solely on the display of the harmful matter rather than any specific types of harm it may cause to the minor—or minors—viewing the matter. Under these circumstances, we are compelled by the holding in *Kelly* to conclude that a defendant may not be convicted of more than one count of dissemination of matter harmful to minors based on one occurrence, even if there was more than one victim.

We agree with the State that the legislature has shown a general concern for the welfare of minors, which is readily apparent based upon the Juvenile Code and the Child Molesting statutes. We also agree with the State that interpreting the statute in this way means that an individual who knowingly or intentionally invites five, ten, or even twenty ten-year-olds to his home and displays a pornographic movie to these children would only be subject to conviction on one count of dissemination. While such a result may conflict with the legislature's desire to protect all minors, the way in which the statute is currently drafted compels us to agree with Scuro's interpretation. If the General Assembly wishes to redraft the statute to provide for multiple convictions for one occurrence of dissemination—as it did to the driving while intoxicated statute following *Kelly*[8]—then it is within its prerogative to do so. But unless and until the legislature redrafts this statute, we must conclude that a defendant may not be convicted of more than one count of dissemination of matter harmful to minors based on one occurrence, even if there was more than one victim. Consequently, we direct the trial court to vacate Scuro's convictions on Counts V and VI.

### III. Non–Unanimous Jury Verdict

■ Finally, Scuro argues that his conviction for disseminating harmful material to D.D. was improper because it may have been returned by a non-unanimous jury. Specifically, Scuro speculates that, as in *Castillo v. State,* 734 N.E.2d 299 (Ind.Ct.App.2000), *summarily aff'd on trans.* 741 N.E.2d 1196 (Ind.2001), some jurors may have relied on different evidence than the other jurors to convict on this count. But Scuro raised no objection at trial to either the verdict forms or the verdict. Consequently, Scuro has waived this argument—an assertion he does not

---

8. In *Kelly,* we noted that the legislature could have drafted the statute in a different way that would have allowed for Kelly's multiple convictions:

> Had the legislature intended otherwise, mechanisms were available to express that intent. For example, the crime could have been defined as "whoever kills another human being while operating a vehicle while intoxicated commits a class C felony." There, the result of the conduct is part of the definition of the crime. An alternative approach would have been the enactment of a provision stating, in effect, that if more than one person dies and/or suffers serious bodily injuries as a result of violating IC 9–11–2–2, each death and/or serious bodily

injury constitutes a separately punishable offense.

527 N.E.2d at 1155. And in fact, following *Kelly,* the legislature amended the driving while intoxicated statute "to provide specifically for those instances where one act of driving while intoxicated causes the death of more than one person. Now, each death may be separately charged." *Manns v. State,* 637 N.E.2d 842, 844 n. 2 (Ind.Ct.App.1994). Currently, the statutes provide that a person who causes death or serious bodily injury while operating a vehicle while intoxicated commits a separate offense for each person whose death or serious bodily injury is caused by the offense. Ind.Code §§ 9–30–5–4(b), –5(c).

contest in his reply brief. *Bruno v. State*, 774 N.E.2d 880, 883 (Ind.2002).

Waiver notwithstanding, we observe initially that because we have already ordered two of the three dissemination convictions vacated based on statutory interpretation, this issue would be moot if not for the State's argument that we should leave two of Scuro's dissemination convictions in place. Specifically, the State emphasizes that D.D. testified that Scuro showed him pornographic videos on three separate occasions; on two of those occasions, only D.D., Scuro, and Jacobs were present, and on the third occasion, all three boys and Scuro were present. Thus, it is possible that the jury convicted Scuro based on two separate displays—one involving D.D. alone, and one involving all three boys. But to determine whether to leave Scuro's conviction in place with respect to D.D., we must determine whether the conviction may have been the result of a non-unanimous jury verdict. Hence, we will address the issue.

In *Castillo*, the State charged the defendant with one count of dealing in cocaine but presented evidence at trial of two separate instances of Castillo's alleged drug dealing. Noting that "the State chose to charge Castillo with one act of dealing in cocaine even though there was evidence that Castillo committed two separate acts of dealing in cocaine," 734 N.E.2d at 304, we concluded as follows:

> It is possible, given these facts, that some jurors believed that Castillo committed the earlier dealing crime at Garcia's home while other jurors believed that Castillo committed the dealing violation at his home later that same day. Consequently, it is possible that the jury's verdict of guilty regarding the charge of dealing in cocaine was not unanimous.

*Id.* at 304–05.[9] We ultimately vacated Castillo's conviction for dealing in cocaine.

The State concedes that *Castillo* "appears to control the present case." Appellee's Br. p. 11. It goes on to contend that

> [i]t is arguable, however, that in this case, where the jury was faced with three young victims, separate incidents, and separate counts for each victim, that all of the jurors found Defendant guilty on Count V[—involving dissemination to D.D.—] based on the incident in which D.D. testified that only Defendant and Jacobs were present when he viewed the movie and the jury used the other incidents for convictions on Counts VI and VII.

*Id.* But it is also arguable that the jury may have found Scuro guilty on Count V based on the incident involving all three boys. As in *Castillo*, the point is that we have no way of knowing.

Because the State did not charge Scuro separately for the incidents involving only D.D., we simply do not know whether the jury convicted Scuro for dissemination to D.D. based on the incidents involving only him or the incident involving all three victims. Had the State been more specific in the charging information, this would not be an issue. But given that Scuro was charged with only one count of dissemination to D.D. based on an unspecified incident, and given that the State presented evidence of three instances of dissemination to D.D., it is possible that the jury's

---

**9.** The *Castillo* court also observed in a footnote that "allowing extraneous evidence of uncharged crimes in this manner is a means of bypassing Ind. Evidence Rule 404(b) which prohibits evidence of other crimes, wrongs, or acts except under narrowly construed exceptions. Improperly admitted evidence of this type may have a prejudicial impact on a juror and contribute to a guilty verdict." 734 N.E.2d at 304 n. 12.

verdict on Count V was not unanimous. Thus, Scuro's conviction for dissemination to D.D. must be vacated.

The judgment of the trial court is affirmed in part, reversed in part, and remanded with instructions to vacate Scuro's convictions on Counts V and VI.

SULLIVAN, J., and MAY, J., concur.