**Derek Scott GEIGER, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

**No. 31A01–0610–CR–427.**

Court of Appeals of Indiana.

May 23, 2007.

Matthew Jon McGovern, Evansville, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Maureen Ann Bartolo, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

BAKER, Chief Judge.

Appellant-defendant Derek Scott Geiger appeals his convictions and sentences for two counts of Impersonating a Public

Servant,[1] a class D felony, two counts of Criminal Confinement,[2] a class B felony, two counts of Criminal Recklessness,[3] a class D felony, and one count of Unlawfully Pointing a Firearm,[4] a Class A misdemeanor. Specifically, Geiger argues that (1) the State violated the trial court's pretrial discovery order, thereby denying him a fair trial, (2) his two convictions for impersonating a public servant were improper, (3) the trial court erred when it ordered his twelve-year sentence to run consecutively to a sentence imposed by the Floyd County trial court, and (4) his sentence is inappropriate in light of the nature of the offenses and his character. Concluding that Geiger can only be convicted of one count of impersonating a public servant pursuant to Indiana Code section 35–44–2–3 but finding no other error, we direct the trial court to vacate Geiger's conviction for Count II and affirm the judgment of the trial court in all other respects.

## FACTS[5]

On July 22, 2005, James and Beth Skaggs left their home in Harrison County at approximately 5:00 a.m. to drive to work. As they exited their driveway, Beth observed a Land Rover in the distance, which she considered unusual because of the early hour and the couple's rural location. As the vehicle erratically approached the Skaggses, Beth said, "Honey, pull over and let these idiots pass us." Tr. p. 314. James and Beth immediately noticed that the vehicle had flashing "small blue and red lights" in the front windshield, and Beth told James, "I bet it's police officers." *Id.* James pulled over to the side of the road and two men with firearms exited the Land Rover, quickly approached the Skaggses' vehicle, and yelled, "Get out of the f*cking car. Get out of the f*cking car now." *Id.* at 315. Two other men remained near the Land Rover.

As the Skaggses exited their vehicle, Geiger approached James, pointed a nine-millimeter Glock handgun at him, told him that the men were with the "narcotics drug force," and alerted him that he and his wife were under suspicion for "liv[ing] in a known meth house." *Id.* at 330. Geiger, who was wearing a shirt displaying a police logo, proceeded to frisk James. Meanwhile, the man near Beth asked for her identification and bankcard, and both men searched Beth's bag and the vehicle's glove box. Suddenly, a man near the Land Rover who appeared to be on a police radio said, "Come on, let's go. We got a call. Let's go, let's go, let's go." *Id.* at 332. The four men immediately returned to the Land Rover and drove away.

Although Beth and James were both distressed, they did not immediately call the police because they believed that the four men had been police officers. However, when Beth told her brother-in-law, Jim Sleucher, about the incident, Sleucher contacted the Harrison County Police Department and learned that there had not been a police stop near the Skaggses' home that

---

1. Ind.Code § 35–44–2–3.

2. Ind.Code § 35–42–3–3.

3. I.C. § 35–42–2–2.

4. Ind.Code § 35–47–4–3.

5. We held oral argument at the Switzerland County Courthouse in Vevay on May 2, 2007. We commend counsel for their excellent written and oral presentations, and we thank the Switzerland Middle School staff and students for their presence and hospitality. We also thank the Honorable John Mitchell of the Switzerland Superior Court and his staff for the generous accommodations and for permitting us to utilize the court's facilities.

morning. Officer Michael Kurz spoke to the Skaggses, and on July 31, 2005, James selected Geiger's photograph from a photographic array. James identified Geiger as the man who pointed the gun at him and frisked him during the incident.

As the police began to investigate, they learned that police stops had also been feigned in Floyd County and Clark County that same day.[6] Floyd County Police Department Officer Thad Neafus obtained a search warrant for Geiger's residence and his vehicle, a Land Rover. A search of Geiger's residence uncovered red and blue strobe lights and copies of two books commonly read by law enforcement officers at the Indiana State Police Academy. A search of Geiger's vehicle uncovered a loaded nine-millimeter Glock handgun.

On July 31, 2005, Floyd County Police Department Officer Russell Wyatt conducted an interview with Geiger. After receiving the *Miranda*[7] warnings and signing a waiver, Geiger admitted that he had been present during the Harrison County incident and that he was the owner of the Glock handgun that had been brandished during the encounter. However, Geiger insisted that he had remained in the backseat of the Land Rover during the incident. Geiger identified the three other men and told Officer Wyatt where he could find the police gear that the men had worn.

On August 22, 2005, the State charged Geiger with Counts I and II—class D felony impersonating a public servant—Counts III and IV—class B felony criminal confinement—Counts V and VI—class A

misdemeanor unlawfully pointing a firearm—and Counts VII and VIII—class D felony criminal recklessness.

Geiger filed a motion for discovery and production of evidence on November 16, 2005, requesting, among other items, all recorded statements that Geiger had made to the police. The trial court granted Geiger's motion that same day. The State filed a notice of compliance on December 1, 2005, which stated that if the State found "additional information or facts which are subject to or covered by such order, the State will promptly notify the court and Defense Attorney [of] its existence thereof." Appellant's App. p. 31.

On Friday, August 11, 2006—four days before the jury trial was scheduled to begin—the prosecutor received a videotape of Geiger's July 31, 2005, statement to the Floyd County Police Department (the videotape). It was the first time that the prosecutor had seen the videotape, and he immediately contacted Geiger's defense counsel, Nicolas Haverstock, and invited him to view the videotape that afternoon. Haverstock declined the invitation.

On August 11, 2006, Susan Schultz—who had represented Geiger in the Floyd County litigation—entered an appearance as co-counsel for Geiger. On August 15, 2006, the trial court held a hearing regarding pending motions in limine, including Geiger's motion to exclude the videotape because the State had not produced it earlier. After hearing evidence from both parties, the trial court ruled that the portions of the videotape regarding the Harrison County incident were admissible.

---

**6.** Geiger pleaded guilty to class B felony armed robbery in Floyd County on June 29, 2006, and the Floyd County trial court sentenced him to ten years imprisonment with four years suspended to probation. Geiger was charged with class B felony armed robbery and class D felony fraud in Clark County, and those charges were still pending at the time of Geiger's trial and sentencing in Harrison County.

**7.** *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

A jury trial was held on August 15, 2006, and the jury acquitted Geiger of the class A misdemeanor unlawfully pointing a firearm at Beth charge but found him guilty of the seven remaining charges. On September 5, 2006, the trial court merged Counts VI, VII, and VIII with Counts I, II, and III, sentenced Geiger to an aggregate term of twelve years imprisonment for the offenses, and ordered that the sentence run consecutively to the sentence imposed by the Floyd County trial court. Geiger now appeals.

## DISCUSSION AND DECISION

### I. The Videotape

■ Geiger argues that the State violated a pretrial discovery order by not producing a copy of the videotape containing his statement to the Floyd County Police Department. Specifically, Geiger argues that the State's discovery violation deprived him of the right to a fair trial and that the violation was not harmless error.

■ The trial court has broad discretion in dealing with discovery violations and may be reversed only for an abuse of discretion that involves clear error and resulting prejudice. *Berry v. State,* 715 N.E.2d 864, 866 (Ind.1999). In the context of discovery violations, a continuance is the usual remedy, and "[e]xclusion of the evidence is an extreme remedy and is to be used only if the State's actions were deliberate and the conduct prevented a fair trial." *Id.* Where a continuance may be an appropriate remedy, failure to request a continuance constitutes a waiver of any alleged error pertaining to noncompliance with the trial court's discovery order. *Fleming v. State,* 833 N.E.2d 84, 91 (Ind. Ct.App.2005).

Regarding appellate review of discovery disputes, our Supreme Court has provided that

[a] trial judge has the responsibility to direct the trial in a manner that facilitates the ascertainment of truth, ensures fairness, and obtains economy of time and effort commensurate with the rights of society and the criminal defendant. Where there has been a failure to comply with discovery procedures, the trial judge is usually in the best position to determine the dictates of fundamental fairness and whether any resulting harm can be eliminated or satisfactorily alleviated.... The trial court must be given wide discretionary latitude in discovery matters since it has the duty to promote the discovery of truth and to guide and control the proceedings, and will be granted deference in assessing what constitutes substantial compliance with discovery orders. Absent clear error and resulting prejudice, the trial court's determinations as to violations and sanctions should not be overturned.

*Fosha v. State,* 747 N.E.2d 549, 553–54 (Ind.2001).

We first note that Geiger does not argue that the State intentionally withheld the videotape during discovery. To the contrary, the evidence shows that as soon as the videotape was discovered, the prosecutor contacted Geiger's attorney and invited him to view the videotape, but Haverstock declined the invitation. And while a continuance is the typical remedy for an alleged discovery violation, Geiger did not request a continuance and, instead, argued "[w]e don't want to do that in this case, and we don't believe we should have to do that in this case." Tr. p. 209. Because Geiger did not avail himself of the opportunity to view the videotape and did not request a continuance, he is unable to show prejudice and has waived his argument regarding the alleged discovery violation.

## II. Multiple Convictions for Impersonating a Public Servant

Geiger argues that his two convictions for class D felony impersonating a public servant violate the principle of double jeopardy as set forth by the common law and Article I, section 14 of the Indiana Constitution. Specifically, Geiger argues that, under these circumstances, Indiana Code section 35–44–2–3 permits Geiger to be convicted only once for impersonating a public servant.

It is an issue of first impression whether the appropriate number of convictions for impersonating a public servant turns on the number of victims to whom the defendant misrepresents himself or, instead, on the number of occasions on which the defendant engages in the unlawful conduct. Indiana Code section 35–44–2–3 provides:

A person who falsely represents that the person is a public servant, with intent to mislead and induce another person to submit to false official authority or otherwise to act to the other person's detriment in reliance on the false representation, commits impersonation of a public servant, a Class A misdemeanor. However, a person who falsely represents that the person is:

(1) a law enforcement officer; or

(2) an agent or employee of the department of state revenue, and collects any property from another person;

commits a Class D felony.

A question of statutory interpretation is a matter of law, and we are neither bound by nor are we required to give deference to the trial court's interpretation. *Townsend v. State*, 793 N.E.2d 1092, 1094 (Ind.Ct.App.2003). When interpreting a statute, we look to the express language of the statute and the rules of statutory construction. *Id.* However, we may not interpret a statute that is clear and unambiguous on its face. *Lampitok v. State*, 817 N.E.2d 630, 643 (Ind.Ct.App.2004). Rather, the words of the statute are to be given their plain, ordinary, and usual meaning unless a contrary purpose is clearly shown by the statute itself. *Id.* We consider the language employed in a statute to have been used intentionally. *Id.*

As we held in *Kelly v. State*, there are two distinct types of criminal statutes: (1) result-oriented statutes intended to criminalize activity where a "bad result" must occur for the defendant to be convicted of the crime, and (2) conduct-oriented statutes intended to criminalize "activity likely to produce bad results if not nipped in the bud," which do not require a victim to actually suffer a bad result for the defendant to be convicted. 527 N.E.2d 1148, 1154 (Ind.Ct.App.1988), *summarily aff'd by Kelly v. State*, 539 N.E.2d 25 (Ind.1989). Multiple convictions may be sustained pursuant to a result-oriented criminal statute if the defendant's conduct involved multiple victims. *Scuro v. State*, 849 N.E.2d 682, 686 (Ind.Ct.App. 2006) (identifying the murder and manslaughter statutes as result-oriented because causing the death or injury of another person is part of the definition of the crime), *trans. denied.* However, a defendant may only be convicted once for a violation of a conduct-oriented statute even if his actions affect multiple victims because the harm to the victims is not included in the statutory definition of the crime. *Id.* at 687.

In *Scuro*, we examined the dissemination of matter harmful to minors statute in light of *Kelly* and determined that the statute was conduct-oriented because "it focuses solely on the display of the harmful matter rather than any specific types of harm it may cause to the minor—or mi-

nors—viewing the matter." *Id.* Thus, even though Scuro had shown offensive material to multiple children, he could only be convicted once pursuant to the statute because there was only one occurrence of dissemination. *Id.*

 After analyzing the impersonating a public servant statute, we conclude that, as drafted,[8] Indiana Code section 35–44–2–3 is a conduct-oriented statute that focuses on the defendant's act of impersonating a public servant and his intent to mislead another person. The statute does not require the victim to actually believe or be induced by the misrepresentation to act to his detriment, and we have previously held that a defendant's conviction for impersonating a public servant can be sustained regardless of whether the victim actually believed the misrepresentation. *Poole v. State,* 559 N.E.2d 1214, 1216 (Ind. Ct.App.1990). Therefore, we hold that a defendant may not be convicted of more than one count of impersonating a public servant pursuant to Indiana Code section 35–44–2–3 based on the same occurrence, even if there are multiple victims. Consequently, we direct the trial court to vacate Geiger's conviction on Count II.

### III. Sentencing

Before Geiger's trial in Harrison County, Geiger pleaded guilty to armed robbery in Floyd County and that trial court sentenced him to an aggregate term of ten years imprisonment. In the case before us, the Harrison County trial court sentenced Geiger to twelve years imprisonment and ordered that the sentence run consecutively to the Floyd County sentence. On appeal, Geiger raises three arguments: (1) that the trial court did not have the authority to order his sentence to run consecutively to the Floyd County sentence, (2) that the enhanced, consecutive sentence violates our holding in *Robertson v. State,* 860 N.E.2d 621 (Ind.Ct.App.2007), trans. *granted,* and (2) that his sentence is inappropriate in light of the nature of the offenses and his character.

Before addressing the merits of Geiger's argument, we observe that on April 25, 2005, the General Assembly amended Indiana's felony sentencing statutes, which now provide that the person convicted is to be sentenced to a term within a range of years, with an "advisory sentence" somewhere between the minimum and maximum terms. *See* Ind.Code §§ 35–50–2–3 to –7. When determining the sentence to impose on a defendant, the trial court "may consider" certain enumerated aggravating and mitigating circumstances in addition to other matters not listed in the statute. Ind.Code §§ 35–38–1–7.1(a) to –7.1(c). Furthermore, the legislature provided that a trial court "may impose any sentence that is … authorized by statute … regardless of the presence or absence of aggravating circumstances or mitigating circumstances." I.C. § 35–38–1–7.1(d). Here, Geiger committed the crimes and was sentenced after the April 2005 amendment of the sentencing statutes; thus, we will apply the amended versions thereof.

### A. Consecutive, Enhanced Sentences

#### 1. Authority to Impose Consecutive Sentences

 Geiger argues that the trial court did not have the authority to impose his

---

8. We note that if the General Assembly wishes to redraft Indiana Code section 35–44–2–3 to provide for multiple convictions for one occurrence of impersonating a public servant, it is within its prerogative to do so. *See, e.g., Scuro,* 849 N.E.2d at 687 n. 8 (noting that the legislature amended the driving while intoxicated statute in light of our holding in *Kelly*). However, unless and until the legislature redrafts this statute, we must conclude that a defendant may not be convicted of more than one count of impersonating a public servant based on one occurrence, even if his conduct involved more than one victim.

twelve-year sentence consecutively to the Floyd County sentence. Specifically, Geiger argues that it is well settled that the trial court must identify an aggravating factor in order to impose consecutive sentences, *Gleaves v. State*, 859 N.E.2d 766, 770–71 (Ind.Ct.App.2007) (citing *Marcum v. State*, 725 N.E.2d 852, 864 (Ind. 2000)), but that the only aggravating factor that the trial court identified was Geiger's prior criminal history, which consisted solely of the Floyd County conviction. Geiger argues that the trial court erred because it "found the [Floyd County conviction] as an aggravating circumstance in order to run the sentences in this cause consecutive[ly] to the same [Floyd County conviction]." Appellant's Br. p. 23 (emphasis added).

■■■ Sentencing determinations are within the discretion of the trial court. *Fuller v. State*, 852 N.E.2d 22, 26 (Ind.Ct. App.2006), *trans. denied.* Indiana Code section 35–50–1–2(c), provides, in relevant part, that

> the court shall determine whether terms of imprisonment shall be served concurrently or consecutively. The court may consider the:
>
> (1) aggravating circumstances in IC 35–38–1–7.1(a); and
>
> (2) mitigating circumstances in IC 35–38–1–7.1(b);
>
> in making a determination under this subsection. The court may order terms of imprisonment to be served consecutively even if the sentences are not imposed at the same time. However, except for crimes of violence, the total of the consecutive terms of imprisonment . . . to which the defendant is sentenced for felony convictions *arising out of an episode of criminal conduct* shall not exceed the advisory sentence for a felony which is one (1) class of felony higher

than the most serious of the felonies for which the person has been convicted. (Emphasis added).

By arguing that the trial court was required to find an aggravating factor, Geiger implies that the Harrison and Floyd County offenses were a single episode of criminal conduct. Indiana Code section 35–50–1–2 defines "episode of criminal conduct" as "offenses or a connected series of offenses that are closely related in time, place, and circumstance." We have previously held that "[w]here a complete account of a crime can be given without referring to the other offense, the offenses are not a single episode of criminal conduct." *Hope v. State*, 834 N.E.2d 713, 716 (Ind.Ct.App.2005). Because the Harrison County offenses can be described without any reference to the events that transpired in the other counties, the State argues that the trial court properly imposed its twelve-year sentence consecutively to the Floyd County sentence. See *Reynolds v. State*, 657 N.E.2d 438, 441 (Ind.Ct.App.1995) (holding that a trial court did not abuse its discretion by imposing consecutive sentences on a defendant who committed burglaries at three separate homes on the same day).

We find that the offenses Geiger committed in Harrison, Floyd, and Clark counties did not constitute a single episode of criminal conduct because a complete account of each crime can be given without referring to the other offenses. While the three criminal episodes did occur on the same day, each offense took place at a different time and in a different location. In fact, we are unable to extensively discuss the circumstances of the Floyd County or Clark County offenses because the only information that we have regarding those crimes stems from the presentence investigation report in this case. The independent nature of each of these offenses

leads us to conclude that they are not a single episode of criminal conduct.

It is apparent to us that Geiger had numerous opportunities throughout the day to stop his behavior. In light of the independent natures of these offenses, we do not find that the trial court abused its discretion by ordering Geiger's sentence to run consecutively to the Floyd County sentence because it was reasonable for the trial court to conclude that Geiger should not benefit from the time served in the Floyd County offense as he served his sentence in the Harrison County offense. Geiger's argument to the contrary fails.

### 2. Propriety of Enhanced, Consecutive Sentence

■ Alternatively, Geiger argues that Indiana's new sentencing scheme only empowers a trial court to impose a consecutive sentence if it imposes the advisory sentence for that crime. Here, the trial court imposed an enhanced twelve-year sentence for both of Geiger's class B felony criminal confinement convictions, and Geiger argues that the trial court only had the authority to order consecutive terms if it imposed the advisory ten-year sentence for each conviction.[9] Geiger directs us to Indiana Code section 35–50–2–1.3(c), which provides, in relevant part:

In imposing consecutive sentences in accordance with I.C. 35–50–1–2 . . . a court is required to use the appropriate advisory sentence in imposing a consecutive sentence or an additional fixed term. However, the court is not required to use the advisory sentence in imposing the sentence for the underlying offense.

Geiger argues that the plain language of this statute requires the trial court to impose "consecutive *advisory* sentences [and,

in] this case, the trial court usurped its authority by imposing consecutive *enhanced* sentences." Appellant's Br. p. 25 (emphases in original).

Geiger's argument highlights a split of authority on our court. In light of the amended sentencing statutes, our court has reached various conclusions regarding the interaction between Indiana Code sections 35–50–1–2(c) and –1.3(c). In *White v. State*, we held:

Indiana Code § 35–50–2–1.3 instructs: "In imposing consecutive sentences in accordance with IC 35–50–1–2[,] a court is required to use the appropriate advisory sentence in imposing a consecutive sentence[.]" We conclude that when the General Assembly wrote "appropriate advisory sentence," it was referring to the total penalty for "an episode of criminal conduct," which, except for crimes of violence, is not to exceed "the advisory sentence for a felony which is one (1) class of felony higher than the most serious of the felonies for which the person has been convicted." See Ind. Code § 35–50–1–2(c). In other words, the advisory sentence for a felony which is one class of felony higher than the most serious of the felonies for which the person has been convicted is the "appropriate advisory sentence" for an episode of nonviolent criminal conduct. Indiana Code § 35–50–1–2 in no other way limits the ability of a trial court to impose consecutive sentences. In turn, Indiana Code § 35–50–2–1.3, which references Indiana Code § 35–50–1–2, imposes no additional restrictions on the ability of trial courts to impose consecutive sentences.

9. The trial court also imposed an enhanced twenty-two month sentence for Geiger's two impersonating a public servant convictions, and the advisory sentence for a class D felony is eighteen months. I.C. § 35–50–2–7. Geiger does not specifically challenge the trial court's imposition of this enhanced sentence.

849 N.E.2d 735, 743 (Ind.Ct.App.2006), *trans. denied.*

In *Robertson,* a separate panel of our court rejected the *White* analysis and, instead, held "that the advisory sentencing statute, IC 35–50–2–1.3, is clear and unambiguous and imposes a separate and distinct limitation on a trial court's ability to deviate from the advisory sentence for any sentence running consecutively." 860 N.E.2d at 625, *trans. granted.* The *Robertson* court expressed its concern with the *White* analysis:

> Our concern with the analysis in *White* is that (1) it renders the language in IC 35–50–2–1.3 surplusage since the consecutive sentencing statute, IC 35–50–1–2, clearly limits the total of the consecutive sentences for non-violent offenses to the advisory sentence for the next highest class of felony; and (2) nothing in the advisory sentencing statute, IC 35–50–2–1.3, limits its application to nonviolent offenses. Although the *White* decision argues that the legislature could not have intended the results the statute is capable of generating, the argument is moot "[w]hen the language of the statute is clear and unambiguous." 849 N.E.2d at 742–43.

*Robertson,* 860 N.E.2d at 624–25 (internal citation omitted). In light of its holding, the *Robertson* court remanded the case to the trial court with instructions that it reduce Robertson's enhanced, consecutive sentence to the advisory sentence for his crime.

Another panel of our court recently denounced the *Robertson* panel's interpretation and, instead, followed the *White* panel's interpretation. *Barber v. State,* 863 N.E.2d 1199, 1210 (Ind.Ct.App.2007). Specifically, the *Barber* panel held that

> Indiana Code § 35–50–2–1.3 serves another very important purpose. In the wake of *Blakely v. Washington,* 542

U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), and *Smylie v. State,* 823 N.E.2d 679 (Ind.2005), our legislature transformed Indiana's sentencing scheme from a presumptive scheme to an advisory scheme. Under the former presumptive scheme, a trial court was required to impose the "presumptive" sentence for a felony conviction unless the court found aggravating circumstances to enhance the sentence or mitigating circumstances to reduce the sentence. Under the new advisory scheme, trial courts are generally not required to use an advisory sentence. *See* I.C. § 35–50–2–1.3 ("Except as provided in subsection (c), a court is not required to use an advisory sentence."). Because an advisory sentence is in most cases exactly that—advisory—the legislature included subsection (c) of Indiana Code § 35–50–2–1.3 to remind Indiana's trial courts of those statutory provisions that do require the "use" of an advisory sentence[, in relevant part,] in imposing consecutive sentences in accordance with Indiana Code § 35–50–1–2.... We acknowledge that nothing in Indiana Code § 35–50–2–1.3(c) limits its application to any specific subsections of Indiana Code §§ 35–50–1–2, 35–50–2–8, and 35–50–2–14, but each of those statutes only includes one subsection that refers to advisory sentences.

*Id.* at 1211 (emphases in original).

We are persuaded that the better analysis is that set forth in *White* and *Barber.* When we read Indiana Code section 35–50–2–1.3 in conjunction with section 35–50–1–2, it is apparent that the reference to the "appropriate advisory sentence" was meant to apply to situations involving the single episode of criminal conduct limitation on consecutive sentencing. This statute was not intended to place any other limits on a court's ability to impose consec-

utive sentences. Contrary to the conclusion of the *Robertson* court, we do not believe that this interpretation renders the statutory language to be surplusage; rather, it provides clarification regarding what advisory sentence is to be used when the single episode of criminal conduct limitation is applicable. We also note that a troubling consequence of the *Robertson* analysis would be that trial courts would be prohibited from imposing enhanced, consecutive sentences on the worst offenders. That could not have been the intent of our legislature. Consequently, we find that the trial court herein had the authority to impose enhanced, consecutive sentences on Geiger, and it did not err by doing so.

### B. Appropriateness

 Geiger argues that his sentence is inappropriate in light of the nature of the offenses and his character. Specifically, Geiger argues that he did not physically harm the Skaggses and that his only other criminal history stems from the Floyd County conviction.

Our court has the constitutional authority to revise a sentence if, after due consideration of the trial court's decision, we find that the sentence is "inappropriate in light of the nature of the offense and the character of the offender." Ind. Appellate Rule 7(B). However, sentence review under Appellate Rule 7(B) is very deferential to the trial court's decision, *Martin v. State*, 784 N.E.2d 997, 1013 (Ind.Ct.App. 2003), and we refrain from merely substituting our judgment for that of the trial court, *Foster v. State*, 795 N.E.2d 1078, 1092 (Ind.Ct.App.2003).

Regarding the nature of the offenses, Geiger accosted two innocent people outside of their home as they were driving to work. Geiger's vehicle had red and blue lights in the windshield, and he wore a shirt displaying a police logo. Geiger forced the Skaggses to exit their car, pointed a firearm at James throughout the encounter, and frisked James while feigning the police stop. While it may be true that Geiger did not physically harm either Beth or James, his unlawful actions still show a clear disregard for the Skaggses' emotional well being. Therefore, we do not find the nature of the Geiger's offenses to aid his inappropriateness argument.

Turning to Geiger's character, his actions on July 22, 2005, show a clear disregard for the law as well as his penchant to terrorize innocent people for his own entertainment. The ease with which Geiger tormented the Skaggses and then proceeded on a three—county crime spree demonstrates his less-than-virtuous character. It is clear that Geiger did not consider the impact that his criminal actions would have on his young daughter, which demonstrates his immaturity and self-centered nature. Therefore, we cannot conclude that Geiger's sentence is inappropriate in light of the nature of the offenses and his character.

The trial court is directed to vacate Geiger's conviction for Count II, and the judgment of the trial court is affirmed in all other respects.

BAILEY, J., and MAY, J., concur.