**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**MARY SPEARS**
Gilroy Kammen Maryan & Moudy
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ANN L. GOODWIN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| JASON RUSSELL RICHARDSON, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No.  11A01-1106-CR-278 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE CLAY SUPERIOR COURT
The Honorable J. Blaine Akers, Judge
Cause No.  11D01-0910-FC-421

**April 16, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**DARDEN, Judge**

Jason Russell Richardson appeals his conviction of child molesting, a class C felony.[1]

We affirm.

ISSUES

I.     Whether the trial court committed reversible error in denying certain for cause challenges during voir dire.

II.    Whether a deputy's testimony constituted impermissible opinion testimony resulting in fundamental error.

III.   Whether the prosecutor engaged in misconduct resulting in fundamental error.

FACTS

The facts most favorable to the verdict show that Richardson lived in rural Clay County with his wife and his wife's two children. The family lived on property where two trailers were located. The family lived in one trailer and used the other trailer for storage.

Between February 1, 2009, and May 31, 2009, K.S., an eleven-year-old female relative, visited the family's property on numerous occasions. On at least one occasion, Richardson asked K.S. to accompany him to the storage trailer, and when she assented, he took her to a bedroom containing only a mattress. Richardson asked K.S. whether she

---

[1] Ind. Code § 35-42-4-3(b).

had had her first kiss and whether she was still a virgin. Richardson also asked K.S. where she was shaving. K.S. responded that she did not know where to shave but that she would ask her mother about it.

Richardson told K.S. that since she was there, he would show her where to shave. Richardson told K.S. to remove her underwear and lie down on the mattress. When she did so, he touched her "in appropriate places" by poking and rubbing "in between" K.S.'s legs with his finger. (Tr. 119). This activity happened more than once, but one encounter ended when Richardson's wife yelled for them from the other trailer.

Clay County Deputy Sheriff Casey Judge and a Child Protective Services ("CPS") employee interviewed K.S. on July 27, 2009. Deputy Judge and the CPS employee interviewed Richardson the next day. On October 18, 2009, the State charged Richardson with two counts of class C felony child molesting. The State subsequently amended its information to one count of class C felony child molesting.

At trial, after K.S.'s testimony, the State played a recording of the July 27, 2009 interview involving Deputy Judge, the CPS employee, and Richardson. Deputy Judge then testified regarding the tape and the investigation. The State rested without presenting medical evidence. After Richardson presented his defense, the jury found him guilty of one count of class C felony child molesting. The trial court subsequently sentenced Richardson to a term of five years' imprisonment.

DECISION

1.      Voir Dire

Richardson argues that the trial court erred in denying his request to challenge two jurors for cause during voir dire. In support of his argument, Richardson cites *Campbell v. State*, 547 N.E.2d 843 (Ind. 1989) and Indiana Code section 35-37-1-5.

The decision of whether to excuse a juror for cause rests within the sound discretion of the trial court. *McHenry v. State*, 820 N.E.2d 124, 127 (Ind. 2005). Trial courts have "substantial deference in such matters because they are in the best position to assess the jurors' ability to serve without bias and to follow the law because the trial courts observe the prospective jurors firsthand." *Scuro v. State*, 849 N.E.2d 682, 685 (Ind. Ct. App. 2006), *trans. denied.* We will reverse a trial court's decision regarding challenges for cause only where the decision is arbitrary or illogical and results in prejudice to the defendant. *Id*. "Indeed, if a defendant uses a peremptory challenge to strike the problematic juror and does not complain that the use of this peremptory challenge prevented him from challenging another juror who was later seated, the defendant has not shown prejudice and any error will be found to be harmless." *Id*.

In the present case, defense counsel requested to remove a prospective juror for cause after the juror initially stated that he had a problem with child molesting charges in general and that a defendant's lawyer would have to convince him that his client was not guilty. The trial court questioned the prospective juror about his ability to be impartial

4

and instructed him on the State's burden of proof. The prospective juror then told the court that "[i]f I'm selected as a juror, I will do my best to listen and make an honest decision." (Tr. 61). The trial court denied defense counsel's request, and defense counsel presumably used a peremptory challenge to remove the prospective juror.[2]

Another prospective juror expressed her anger about child molesters and rapists and voiced her concern that she could not be impartial. Defense counsel moved to strike the prospective juror for cause. The trial court examined the prospective juror regarding her understanding of the nature of a criminal charge, the State's burden of proof, her ability to follow the trial court's instructions, and her ability to be impartial. The prospective juror told the trial court that she understood the trial court's instructions, that she did not wish to be prejudiced, and that she hoped that she would be able to "sit here and listen." (Tr. 93). The trial court did not rule on defense counsel's motion to remove the prospective juror for cause, and the prospective juror was removed when defense counsel exercised his peremptory challenge.[3]

In *Campbell*, our supreme court held that the trial court abused its discretion in not removing for cause a prospective juror who communicated such "strong and unyielding opinions regarding criminals" that his later statement that he was willing to give the

---

[2] The record does not specifically indicate who used the peremptory challenge. In determining this issue, we assume that defense counsel exercised the peremptory challenge to remove the juror that he had requested be removed for cause. Indeed, although the record is unclear, the State does not argue on appeal that it challenged this juror.

[3] Again, in determining this issue, we assume that defense counsel exercised the peremptory challenge.

defendant a fair trial was "less than convincing considering his very strong personal feelings and philosophies on the subject." 547 N.E.2d at 844. However, the court also emphasized that the prejudice against the defendant arose because the defendant had to use a peremptory challenge to remove the aforementioned juror, which resulted in the defendant's inability to challenge another prospective juror. Richardson does not contend that he was denied the ability to challenge a prospective juror.

Indiana Code section 35-37-1-5(a)(2) provides that a good cause for challenge occurs if the prospective juror "has formed or expressed an opinion as to the guilt or innocence of the defendant." However, "such an opinion is subject to subsection (b)," which states that the trial court may "admit the juror as competent" if, after examination, "the juror states on oath that the juror feels able, notwithstanding the juror's opinion, to render an impartial verdict upon the law and the evidence; and the court is satisfied that the juror will render an impartial verdict." Similarly, Indiana Code section 35-37-1-5(a)(11) states that there is good cause to challenge if the prospective juror "is biased or prejudiced for or against the defendant."

Here, even assuming that the trial court erred in not removing either juror for cause, we conclude that Richardson has not shown that he was fundamentally prejudiced. Therefore, any error would be harmless. The record discloses that he struck both prospective jurors with peremptory challenges; thus, they did not serve on the panel.

Although Richardson claims he ultimately exhausted his peremptory challenges,[4] he makes no argument that he was unable to peremptorily strike other prospective jurors because he was required to use peremptory challenges on these two prospective jurors. Consequently, Richardson "has not shown that he was prejudiced because of the trial court's denial of his challenges for cause. Thus, even if the trial court erred in denying the challenges for cause, it was harmless error." *See Scuro*, 849 N.E.2d at 685.

2.     Opinion Testimony

Richardson alleges that Deputy Judge offered opinion testimony that invaded the province of jury and resulted in prejudice to him. Richard argues that he was prejudiced by Deputy Judge's alleged vouching of K.S.'s allegations and by her statements regarding the body language of both Richardson and the victim.

---

[4] In a footnote in his brief, Richardson asserts:

> Finally, it seems probable that the defense's final peremptory strike was used on [a prospective juror] who had "no use" for "child molesters" and spoke obliquely of "hanging" them, and who said he did not know if he could adhere to the presumption of innocence. [This prospective juror] was in the final round of jurors stricken.

> Thus, the record does show, albeit in a roundabout way, that the defense exercised all of its peremptory strikes and so has not waived the error resulting from the trial court's failure to excuse [the two previous prospective jurors].

(Richardson's Br. at 29 n.15) (citations omitted).

The State, on the other hand, did attempt to analyze the record, and its argument appears to refute Richardson's assertion. For purposes of this appeal, we accept Richardson's implication that he used all of his peremptory strikes. However, the best practice would have been for Richardson to reconstruct the record under Indiana Appellate Rule 31 and make such a part of the record for review on appeal.

*a.        Vouching as Fundamental Error*

At trial, K.S. testified about Richardson touching her between the legs after she had removed her panties at his request. Defense counsel questioned K.S. about her inability to remember the precise date of the offense, the family members she had spoken to about the offense, and her inability to remember other details about the offense, such as what she was wearing, what Richardson was wearing, and what hand or hands he had used in committing the offense.

The State then showed a video of Deputy Judge's interview with Richardson. Afterward, the following colloquy occurred between the prosecutor and Deputy Judge:

> Q:        What did you (inaudible), if anything, from the course of that investigation or that interview that helped your interview that helped your investigation?
>
> A.        There was not a direct confession of any sort. There were, however, a few comments that caused some concerns for me. A couple of comments that I thought kind of showed a little bit of how Mr. Richardson thinks. A few things that kind of hinted towards the volitivity [sic] of the complaints that I had heard from K.S. the previous evening.

(Tr. 140).

Richardson contends that in her last statement, Deputy Judge improperly vouched for K.S., thus invading the province of the jury. Richardson contends that Deputy Judge's use of "volitivity" was her manner of stating "validity." From the context of the statement, we conclude that Richardson is correct.

8

Our supreme court has consistently found error where a witness was permitted, over a defendant's objection, to vouch for the veracity of a child victim. *Okuly v. State*, 574 N.E.2d 315, 316 (Ind. Ct. App. 1991). The ultimate factual determination of whether a charged incident actually occurred should be made by the trier of fact. *Id*.

Here, however, there was no objection to Deputy Judge's statement. Accordingly, Richardson argues that we should find that fundamental error has occurred. We review Richardson's allegation of error pursuant to our well-settled fundamental error analysis: (1) whether the error was a blatant violation of basic principles; (2) whether the harm or potential harms was substantial; and (3) whether the resulting error denied the defendant fundamental due process. *Id*. Fundamental error is that error "which so inundates the trial as to remove its essential cloak of fairness." *Kelley v. State*, 566 N.E.2d 591, 593 (Ind. Ct. App. 1991).

In *Okuly*, a caseworker testified without objection that "I believe what [the child victim] is telling me and she's telling the jury and the people in this courtroom is the truth." *Id*. On review, we determined that the child victim's testimony "was central to a determination of guilt or innocence." *Id*. at 317. We noted, however, that the jury "did not receive a distorted, one-sided analysis of [the child victim's] credibility." *Id*. We concluded that although the child victim's credibility was improperly bolstered by the caseworker's testimony, "Okuly was permitted to repeatedly assail the impression that [the child victim] was truthful." *Id*. Thus, we held that Okuly was given a fair

9

opportunity to meet the allegations against him and that he was not denied fundamental due process.

In *Kelley*, a therapist was asked, "In real certain terms do you believe [the child victim is] telling the truth," to which the therapist answered, "Yes, I do." 566 N.E.2d at 593. Without analysis of the transcript, we held that the therapist's testimony, though impermissible vouching, did not "rise to the level where it would affect the fairness and integrity of the judicial proceedings or deny Kelley due process." *Id*. We then held that the therapist's testimony was not fundamental error.

In *Edgin v. State*, 657 N.E.2d 445, 447 (Ind. Ct. App. 1995), *trans. denied*, Edgin argued that his trial counsel was ineffective for allowing a detective to testify, without objection for vouching, that the child victims "seemed very credible." We concluded that the detective's statement was improper vouching testimony and that an objection would have been sustained. We noted that "[e]ven when the victim's testimony is central to the issue of the defendant's guilt or innocence, the defendant is not prejudiced so long as the finder of fact does not receive a one-sided view of the victim's credibility." *Id*. (citing *Okuly*, 574 N.E.2d at 317). Because Edgin's attorney was able to cross-examine both the detective and the child victims, and "all of this evidence concerning the children's credibility and bias was available for the jury to weigh against [the detective's] statement," we held that Edgin was neither prejudiced by his attorney's failure to object to vouching testimony nor deprived of a fair trial. *Id*. at 447-48.

10

In the present case, Deputy Judge's statement was somewhat equivocal. However, to the extent that it arguably constituted improper vouching, we do not conclude that Richardson was fundamentally prejudiced, deprived of a fair trial, or deprived of his due process rights. Richardson's attorney vigorously questioned K.S. and challenged her veracity. His attorney also challenged Deputy Judge's ability to assess K.S. by showing that she had recently become a police officer and that she had never interviewed a child victim. In light of all the circumstances, we hold that there is no fundamental error.[5]

### b. Opinion Testimony about Others' Body Language

The entire interview of Richardson by Deputy Judge was shown to the jury without objection. Richardson contends that Deputy Judge's testimony about Richardson's habits of snapping a button on his shirt, twisting his wedding ring, and adjusting his hat was inadmissible under Indiana Rule of Evidence 701. Richardson further contends that this testimony was impermissibly bolstered because his "absent gestures were 'juxtaposed' with those of K.S., who, due to her act of pulling her shirt collar up on her face and '[holding] into herself,' the deputy described as being 'scared almost[,]' as if 'she [were] trying to protect herself from what she was saying."

---

[5] In his "Appellant's Notice of Supplemental Authority," Richardson cites the recent case of *Hoglund v. State*, __ N.E.2d __, 2012 WL 749416 (Ind. March 8, 2012) for the proposition that "even indirect vouching for alleged child victims is impermissible . . . ." In *Hoglund*, our supreme court held in its background discussion that "indirect vouching testimony is little different than testimony that the child witness is telling the truth." *Hoglund*, at *5. The court subsequently explained that this indirect vouching testimony, which came from three witnesses, did not rise to the level of fundamental error. *Id.* at *7. As explained in our opinion, there is no fundamental error under the circumstances of this case.

(Richardson's Br. at 14). Richard cites *Tolliver v. State*, 922 N.E.2d 1272, 1279 (Ind. Ct. App. 2010), *trans. denied* and like cases for the proposition that "body language testimony" is of dubious value.

Again, defense counsel did not object, and Richardson asserts fundamental error. Deputy Judge's testimony reveals a relatively inexperienced officer's mere observations about Richardson's and K.S.'s actions during questioning. It does not add any weight to the actions that the jury observed on the tape of Richardson's interview.[6] Furthermore, the jury saw in an excoriating cross-examination by Richardson's counsel that Deputy Judge generally lacked experience as a new recruit and specifically lacked experience questioning children. While Deputy Judge's testimony was arguably inadmissible as unhelpful to the jury, we cannot say, given the emphasis during cross-examination upon her inexperience, that Deputy Judge's testimony either prejudiced Richardson or denied him his due process rights. Accordingly, there was no fundamental error.

3.    Statements During Closing Arguments

Richardson contends that the prosecutor committed misconduct when he allegedly (1) invited the jury to draw an adverse inference from Richardson's silence and employment of counsel; (2) misstated the law and cast aspersions on the propriety of the defense's final argument; and (3) misstated the evidence. Richardson acknowledges that

---

[6] Indeed, Richardson admits in his argument that "because the entirety of her interview with Mr. Richardson was played for the jury, the jury had access to the exact same perceptions as the officer." (Richardson's Br. at 15).

12

no objection or request for admonition was made by defense counsel; therefore, he premises his contention on fundamental error.

In reviewing a claim of prosecutorial misconduct, we must first determine whether the prosecutor's conduct was improper. *Newsome v. State*, 686 N.E.2d 868, 875 (Ind. Ct. App. 1997). If we determine the conduct was improper, we must then determine whether under all the circumstances the prosecutor's misconduct placed the defendant in a position of grave peril. *Id.* In deciding whether the defendant was placed in grave peril, we consider the probable persuasive effect of the misconduct on the jury's decision. *Id.*

  *a.*  *Richardson's Silence and Right to Counsel*

Richardson contends that the prosecutor's references to his Fifth Amendment privilege against self-incrimination and right to an attorney invited the jury to draw an adverse inference of guilt. Richardson cites pages 149, 155-56, and 197 of the transcript in support of his contention.

During cross-examination of Deputy Judge, defense counsel attempted to show that the deputy was inexperienced and did not conduct a thorough investigation. The following colloquy occurred:

Q: Did you investigate . . . who all did you talk to in your investigation?

A: I spoke primarily with K.S., her mother, and [Richardson].

Q: Primarily or you spoke (inaudible)?

A. I don't recall any conversations with anyone else. If I had them, I didn't take any notes from them or gain anything from them to

13

> remember . . . that's beside of course from [the CPS employee] who I was working with and was present with me.
>
> Q: How many times did you attempt to set up an additional interview with Mr. Richardson?
>
> A: I know that it was at least once because I remember the conversation with him on the phone when he told me that he wasn't going to meet with me anymore.
>
> Q: Did he ever tell you to contact his attorney?
>
> A: Yes, he did.
>
> Q: Did you make any attempt to contact his attorney?
>
> A: I was not aware of who his attorney was.

(Tr. 149).

Subsequently, on re-direct, the prosecutor and Deputy Judge entered into the following exchange:

> Q: [Defense counsel] asked you if you had ever attempted to contact [Richardson's] attorney once he told you to contact his attorney. Is it the normal practice of the deputy to start [a] discussion with an attorney for a possible accused?
>
> A: Not typically. Generally, if they want to speak with us, they contact us to make the arrangements.
>
> Q: Did anybody contact you to discuss this with you?
>
> A: No.

(Tr. 155-56).

14

During closing argument, the prosecutor stated, "Deputy Judge did exactly what she needed to do and when she tried to follow up, what was she told? Call my attorney." (Tr. 196-97).

The State may not use "the act of the defendant's silence or the fact of the request for counsel itself as indicative of guilt or damaging to credibility." *Willsey v. State*, 698 N.E.2d 784, 793 (Ind. 1998) (citing *Wainwright v. Greenfield*, 474 U.S. 284 (1986); *Doyle v. Ohio*, 426 U.S. 610 (1976)). There is no *prima facie* bar against any mention whatsoever of a defendant's right to request counsel, but instead there is a bar against any exploitation of that constitutional right by the prosecutor. *Id.* A prosecutor's remarks about a defendant's silence are permissible if they are made in rebuttal of the defendant's argument. *Barton v. State*, 936 N.E.2d 842, 852 (Ind. Ct. App. 2010), *trans. denied.*

Here, it is clear that defense counsel wanted to establish that Deputy Judge was so inexperienced that she failed to conduct a full investigation and that she failed and/or was too afraid to deal with Richardson's counsel. The State's reference to Richardson's request for an attorney was in response to defense counsel's strategy; it was not an inappropriate attempt to use Richardson's right to remain silent or request an attorney to indicate Richardson's guilt or damage his credibility. There is no error here, fundamental or otherwise.

15

*b.* *Alleged Misstatements and Aspersions by the Prosecutor*

Richardson contends that the prosecutor committed fundamental error when he referred in his rebuttal to Richardson's arguments about the State's burden of proof. Richardson argues that the prosecutor's reference improperly implied that the prosecutor was a "good guy" and that defense counsel was a "'bad guy' or, worse, 'a shyster[,]' [which] conduct is 'clearly improper.'" (Richardson's Br. at 22). (citing *Bardonner v. State*, 587 N.E.2d 1353, 1361-62 (Ind. Ct. App. 1992), *trans. denied).* Richardson claims that the prosecutor's allegedly improper statement resulted in prejudice.

Our review of the transcript discloses that defense counsel, during closing argument, acknowledged that the State did not have to prove that the molestation occurred on a specific date. Defense counsel then attempted to tie the molestation to a specific date when Richardson had asked K.S. to help him move a dresser. Defense counsel argued the following:

> Testimony says sometime in the summer, but a date wasn't required by law and there (inaudible) particularly given, but an incident was given to help establish some time reference. I didn't provide that incident. I didn't develop a dresser got moved, they did and yet I have a witness for the moving of the dresser that said nothing occurred.

(Tr. 189).

> On rebuttal, the prosecutor responded:

> The date, you're right, I can't tell what date, but ladies and gentlemen of the jury when you look at the elements and the Judge instructs as to the elements that need to be proven, if you see anywhere listed within those elements that I have to show you anything regarding a date, you come back

16

and acquit him. But, you're not going to do that, because what [defense counsel] is asking you to do is take into consideration something that I don't have to prove. He's trying to increase the burden upon me to make it more difficult. Do not do that. Follow the law. He discusses the dresser and (inaudible). He discusses the dresser how it (inaudible). The State (inaudible) forth the dresser. If you recall any testimony from K.S., from the detective that it was a dresser that was moving. Again, how (inaudible) that acquit him. It was not there. That was just a misstatement as to what the evidence was entered into by the State. At no time did we talk about a dresser.

(Tr. 192-93).

The prosecutor does not imply that he is the "good guy" and that defense counsel is the "bad guy" or a "shyster." Instead, the prosecutor correctly points out that the State's case against Richardson was not limited to a particular day where Richardson asked K.S. to help move a dresser. The State's case involved a molestation where Richardson isolated the victim in the storage trailer under the pretext of moving furniture, but the molestation did not necessarily occur on the day that defense counsel suggests that it happened. The prosecutor's statements were not improper, and there is no fundamental error here.

    *c.    Alleged Misstatements about the Evidence in Closing Argument*

Richardson contends that the prosecutor misstated the evidence in his closing argument. Richardson argues that the prosecutor erroneously claimed that in the Deputy Judge-Richardson interview, Richardson (1) began sex-related statements about K.S. before the topic was introduced by Deputy Judge; (2) began his description of his property by talking about the trailer-room where the molestation occurred after being

17

asked to begin by describing that trailer;[7] and (3) denied that his wife had taken nude pictures of children when no such allegation had been made.

We note that the jury saw a video of the interview at issue, and the individual members were able to determine what had happened during the interview. We also note that the prosecutor did not claim that Richardson introduced sex-related topics but that he "drove [the interview] down the sexual road." (Tr. 198). Our review of the recording verifies that the prosecutor's statement is a fair assessment of the interview, as Richardson continually referenced sexual matters during the interview. With reference to the description of the trailers, the prosecutor did not mischaracterize the recording, as the recording reveals that Deputy Judge asked Richardson "to give us a little bit of a feel for the trailer you're living in and the second trailer . . . ." (State's Ex. A 24:33-25:05). Accordingly, she did not invite him to first describe the trailer room where the molestation occurred. Finally, with reference to the denial, the recording shows that no accusation was made at the time Richardson denied that his wife took "nudie shots or none of that crap." (State's Ex. A 8:51-9:55). In short, the prosecutor's description of the evidence was consistent with the recording, and he was entitled to comment upon that evidence. *See Miller v. State*, 623 N.E.2d 403, 407-08 (Ind. 1993), *cert. denied*.[8]

---

[7] Deputy Judge had emphasized that she found it significant that of all the rooms in the two trailers, Richardson began his description with the room where the molestation happened.

[8] Richardson contends that the cumulative effect of any errors constitutes fundamental error. Because we find no error by the prosecutor during closing and rebuttal arguments, we find that there is no cumulative prejudicial effect.

18

CONCLUSION

The trial court did not prejudice Richardson by denying certain for cause challenges. In addition, Deputy Judge's testimony did not result in fundamental error. Finally, the prosecutor committed no error in his closing and rebuttable arguments.

Affirmed.

BAKER, J., and BAILEY, J., concur.