**James E. WINTERS, Appellant–
Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 49A02–9812–CR–953.

Court of Appeals of Indiana.

Nov. 30, 1999.

Stephen Gerald Gray, Indianapolis, Indiana, Attorney for Appellant.

Jeffrey A. Modisett, Attorney General of Indiana, James A. Garrard, Deputy Attorney General, Indianapolis, Indiana, Attorney for Appellee.

## OPINION

NAJAM, Judge

### STATEMENT OF THE CASE

James E. Winters appeals his conviction after a bench trial for carrying a handgun without a license, as a Class A misdemeanor.[1] Winters raises two issues for our review which we consolidate and restate as whether there was sufficient evidence to sustain his conviction.

We affirm.

### FACTS

In the early morning hours of May 20, 1998, Indiana State Police Trooper Dean Wildauer and a deputy investigated a report that unsupervised female juveniles were staying in a room at a Howard Johnson motel. While standing in the hallway near the juveniles' room, Trooper Wildauer heard screaming and swearing coming from a nearby room. When Wildauer knocked on the door, the yelling stopped. Trooper Wildauer then heard Winters say, "I'll kill the m—— f——." Record at 23. He also heard a bullet being chambered in a semi-automatic weapon. Trooper Wildauer informed the room's occupants that he was a policeman and ordered them to open the door. A woman complied, and the officers observed Winters and another male in the room along with another female. The three were standing near the two beds.

Upon entering the room, the troopers ordered the occupants to place their hands where they could be seen. When Winters, the other male, and one of the females refused to cooperate, the officers ordered them to lie on the floor, and the three of them were handcuffed. Trooper Wildauer asked for the location of the gun, but Winters denied any knowledge of a gun. The officers discovered a bullet on top of the bed in proximity to where Winters had been standing and a loaded nine millimeter semi-automatic pistol under the mattress. Winters eventually admitted the gun was his. The State charged Winters with carrying a handgun without a license as a Class A misdemeanor. Winters was convicted as charged. He now appeals.

---

1. IND.CODE §§ 35–47–2–1; 35–47–2–23.

## DISCUSSION AND DECISION

 Winters argues that the State did not present sufficient evidence to support his conviction for carrying a handgun without a license. When reviewing a challenge to the sufficiency of evidence, we neither reweigh the evidence nor judge witness credibility. *Haviland v. State,* 677 N.E.2d 509, 516 (Ind.1997). Rather, we examine only the evidence most favorable to the judgment together with all reasonable inferences to be drawn therefrom. *Sears v. State,* 668 N.E.2d 662, 670 (Ind. 1996). If there is evidence of probative value from which a reasonable trier of fact could infer guilt beyond a reasonable doubt, we will affirm the conviction. *Id.* We apply this standard whether the evidence is direct or circumstantial in nature. *Burgess v. State,* 461 N.E.2d 1094, 1098 (Ind.1984).

Indiana Code Section 35–47–2–1 provides that "a person shall not carry a handgun in any vehicle or on or about his person, except in his dwelling, on his property or fixed place of business, without a license issued under this chapter being in his possession." Winters first challenges whether the evidence demonstrated he was "carrying" a handgun. According to Winters, there was no evidence presented that he "had an unlicensed handgun on his person" because the officers recovered the handgun from underneath a mattress in the motel room. Thus, Winters contends he was not "carrying" the handgun within the meaning of Indiana Code Section 35–47–2–1.

 Our supreme court has recently examined this statute and stated that its relative breadth "encompasses more than moving about with a firearm attached to one's body." *Henderson v. State,* 715 N.E.2d 833, 835 (Ind.1999). Specifically, the relevant provision states that the handgun must be carried "on or about his person." IND.CODE § 35–47–2–1. "On" refers to actual possession, which occurs when a person has direct physical control over the item. *See Henderson,* 715 N.E.2d at 835.

"About" involves constructive possession, which occurs when a person has the intent and capability to maintain dominion and control over the item. *See id.* (citing *Walker v. State,* 631 N.E.2d 1, 2 (Ind.Ct. App.1994)). Knowledge is a key element in proving intent. *Id.* Thus, when constructive possession is asserted, the State must demonstrate the defendant's knowledge, which may be inferred from either the exclusive dominion and control over the premises containing the contraband or, if control is non-exclusive, evidence of additional circumstances pointing to the defendant's knowledge of the presence of the contraband. *Id.* at 835–36 (citing *Woods v. State,* 471 N.E.2d 691, 694 (Ind.1984)). Proof of dominion and control can be found through various means, including:

(1) incriminating statements by the defendant,

(2) attempted flight or furtive gestures,

(3) location of substances like drugs in settings that suggest manufacturing,

(4) proximity of the contraband to the defendant,

(5) location of the contraband within the defendant's plain view, and

(6) the mingling of the contraband with other items owned by the defendant.

*Id.* at 836.

 Here, Trooper Wildauer testified that he first heard a male voice yell, "I'll kill the m——— f———." Record at 23. Immediately following this outburst, Trooper Wildauer heard a round being chambered in a semi-automatic weapon. From his questioning of Winters, Trooper Wildauer identified Winters as the person yelling the obscenities. Upon gaining access to the motel room, Trooper Wildauer and a deputy found a bullet on top of the bed near where Winters had been standing. When the officers lifted the mattress, they found a nine millimeter Smith and Wesson semi-automatic handgun. Although Winters first denied any knowledge of a gun, he later admitted that the gun was his.

Contrary to Winters' contention, the State was not required to prove actual possession of the handgun. Constructive possession is enough.[2] Nevertheless, Winters' threat to "kill," which occurred immediately before the handgun was loaded, supports a determination that he did in fact hold the weapon. In addition, his proximity to the gun when it was found and, especially, his admission that he owned the gun, support a conclusion that Winters constructively possessed the handgun. We conclude that the evidence shows that Winters carried a handgun on or about his person. *See Ferrell v. State,* 656 N.E.2d 839, 842 (Ind.Ct.App.1995) (evidence supported finding that juvenile carried an unlicensed handgun where victim observed juvenile holding pistol and officer recovered pistol from under car seat within juvenile's reach).

 Next, Winters contends that the motel room where the troopers discovered the gun was his "place of lodging" and thus, his dwelling, so that he was under no legal duty to carry a license. The relevant portion of the statute does not permit a person to carry a handgun "except in his dwelling." IND.CODE § 35–47–2–1. A "dwelling" is defined as "a building, structure, or other enclosed space, permanent or temporary, movable or fixed, that is a person's home or place of lodging." IND.CODE § 35–41–1–10.

Here, the record reveals no evidence from which to infer that Winters used the room as his place of lodging. There was no evidence that Winters ate or slept in the room. *See, e.g., Mowrer v. State,* 447 N.E.2d 1129, 1132 (Ind.Ct.App.1983) (finding that defendant's hotel room was "transitory home" for Fourth Amendment purposes based on evidence that defendant had eaten and slept in room), *trans. denied.* Further, there is no indication that Winters registered or paid for the room, or that he intended to spend the night there. Rather, the evidence most favorable to the judgment and all reasonable inferences to be drawn therefrom indicates that Winters was in the motel room for other purposes.

Winters' bald assertion that the motel room was his dwelling is not enough. There is sufficient evidence to support the trial court's conclusion that Winters carried a handgun in a motel room that was not his *bona fide* dwelling. Accordingly, his claim of insufficient evidence fails.

Affirmed.

STATON, J., and RUCKER, J., concur.

---

2. Under certain circumstances, one can have the intent and capability to maintain domin- ion and control over a handgun still untouched by that person.