Fidel CASTILLO, Appellant–Defendant,

v.

STATE of Indiana, Appellee.

No. 09A02–9909–CR–00648.

Court of Appeals of Indiana.

Aug. 31, 2000.

Rehearing Denied Oct. 16, 2000.

Caroline B. Briggs, Lafayette, Indiana, Attorney for Appellant.

Karen Freeman–Wilson, Attorney General of Indiana, Barbara Gasper Hines, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Appellee.

## OPINION

SULLIVAN, Judge

Appellant, Fidel Castillo (Castillo), appeals his convictions for Possession of Cocaine,[1] a Class A felony,[2] and for Dealing in Cocaine,[3] a Class A felony.[4]

We affirm in part, reverse in part, and remand.

Upon appeal, Castillo presents four issues for our review:

1) Whether the convictions for possession of cocaine and delivering cocaine constitute double jeopardy;

2) Whether the trial court erred by failing to require the jury to decide unanimously which of two specific acts of dealing constituted the crime charged;

3) Whether there was sufficient evidence adduced at trial to conclude that Castillo committed the offense of possession of cocaine; and

4) Whether the search warrant issued was invalid because a police officer testified that the confidential informant was male when the confidential informant was actually female.

The facts[5] most favorable to the jury's verdict reveal that on February 6, 1998, Dorla A. Salmons (Salmons), an inmate at the Cass County Jail, contacted Logansport Police Officer Robert A. Burgess (Burgess) and informed him that she could purchase cocaine from Castillo. Salmons agreed to act as a confidential informant for the Logansport Police Department and purchase cocaine from Castillo and another man named Arnaldo Garcia (Garcia).

Officer Burgess picked Salmons up at the Cass County Jail and brought her to his office. Officer Burgess searched Salmons to ensure that she did not have any drugs on her person, outfitted her with a wire, and gave her $200 to buy cocaine from Castillo. Indiana State Police Detective Larry Mote (Mote) then transported Salmons to Garcia's home at 401 East Miami Street in Logansport. Garcia's home is situated across from El–Tip–Wa

---

1. I.C. 35–48–4–6 (Burns Code Ed. Repl.1998 & Supp.2000).

2. Possession of Cocaine is a Class C felony if the amount of cocaine weighs 3 grams or more. I.C. 35–48–4–6(b)(1)(A) (Burns Code Ed. Repl.1998 & Supp.2000). However, it is elevated to a Class A felony if it is committed within 1,000 feet of school property. I.C. 35–38–4–6(b)(3)(B)(i) (Burns Code Ed. Repl. 1998).

3. I.C. 35–48–4–1(a)(2) (Burns Code Ed. Repl. 1998).

4. Dealing in Cocaine is a Class B felony. However, it is elevated to a Class A felony if it is delivered within 1,000 feet of school prop-

erty. I.C. 35–48–4–1(b)(3)(B)(i) (Burns Code Ed. Repl.1998).

5. Appellant's Brief is severely lacking in its Statement of the Facts. We remind Appellant of Ind. Appellate Rule 8.3(A)(5) which states that "[t]he brief of Appellant shall contain ... [a] statement of the facts relevant to the issues presented for review, with appropriate references to the record." Appellant's statement of the facts encompassed less than a full page without record citations. Yet, the record consisted of six volumes, and upon appeal, Appellant has raised four complex legal issues.

which is a career center funded through the Logansport School Corporation. Detective Mote watched Salmons enter the home and monitored the transaction by radio from inside his car.

Inside Garcia's home, Castillo sold Salmons four "rocks" of cocaine for $200. Record at 930. Salmons immediately left the home, returned to Detective Mote's car and gave him the cocaine she had purchased from Castillo. Detective Mote then drove Salmons to a cemetery to meet with Officer Burgess who searched Salmons again to ensure that she was not carrying any money or drugs.

Later that same day, Detective Mote gave Salmons another $200 to purchase more cocaine and drove her to Castillo's apartment at 420½ Tenth Street in Logansport. Castillo's apartment is located next door to a licensed day care facility. Salmons entered the residence, purchased six rocks of cocaine, and then returned to Detective Mote's car. Officer Burgess again searched Salmons to make sure she did not have any hidden drugs or money.

On the evening of February 6, 1998, after obtaining a search warrant, the police officers conducted a search of Castillo's apartment. Upon approaching the apartment, Officer Burgess observed someone in an upstairs bedroom throw something from the window. The package landed between Castillo's apartment and the day care center and was later determined to contain over 15 grams of cocaine. Once inside the apartment, the police officers observed Castillo leaving the bedroom from which the cocaine had been thrown.

At the time, Castillo lived in the apartment with his sister and brother-in-law.

In addition to the cocaine found outside the apartment, during the search of Castillo's apartment, the police also discovered the money that Salmons had used to make the two purchases of cocaine earlier that day, a stolen gun,[6] $3,325 in cash, postal scales, and other property. Castillo was arrested, and on February 9, 1998, he was charged with Possession of Cocaine, Dealing in Cocaine, Maintaining a Common Nuisance,[7] and Receiving Stolen Property.[8]

On December 23, 1998, Castillo filed a Motion to Suppress Evidence seized in the search of Castillo's home on February 6, 1998. He alleged that the testimony upon which the search warrant was issued was defective because it stated that the informant was reliable but did not state why the informant was reliable or credible. The trial court held a hearing on Castillo's motion to suppress on April 7, 1999. On April 26, 1999, the trial court denied Castillo's motion to suppress the evidence. On April 29, 1999, after a trial, the jury returned a verdict of guilty on all counts.

## I. Double Jeopardy

Castillo first contends that his conviction for possession of cocaine and his conviction for dealing in cocaine violate the standards of double jeopardy because possession of a drug is an included offense of delivering that drug. Castillo asserts that the charging information for both the possession and the dealing allege the same date and do not differentiate between the time of the possession of the cocaine and the time of dealing.[9] Castillo, therefore, concludes

6. The gun had been reported stolen on December 11, 1997 by Tim Lee Willis. Willis did not know Castillo and had never been to his home.

7. I.C. 35–48–4–13(b)(2)(D) (Burns Code Ed. Repl.1998).

8. I.C. 35–43–4–2(b) (Burns Code Ed. Repl. 1998).

9. Count I of the charging information alleges that "on or about February 6, 1998, in Cass

County, State of Indiana, Fidel C. Castillo, without a valid prescription or order of a practitioner acting in the course of his professional practice, did knowingly or intentionally possess cocaine in an amount (pure or adulterated) weighing at least three grams: in, on or within one thousand (1,000) feet of school property...." Record at 1.

Count II of the charging information alleges that "on or about February 6, 1998, in Cass County, State of Indiana, Fidel C. Castillo did knowingly deliver cocaine, pure or adulterat-

that the possession of cocaine was not sufficiently differentiated in the charging information from the possession inherent in the dealing charge, and therefore, convictions on both charges violated his right against double jeopardy.

Double jeopardy concerns usually arise when a defendant is either twice tried or given multiple punishments for the same offense. *Redman v. State* (1997) Ind.App., 679 N.E.2d 927, 928, *trans. denied.* In *Richardson v. State* (1999) Ind., 717 N.E.2d 32, 49, our Supreme Court recently analyzed the issue of double jeopardy and concluded:

> "two or more offenses are the 'same offense' in violation of Article I, Section 14 of the Indiana Constitution, if, with respect to *either* the statutory elements of the challenged crimes *or* the actual evidence used to convict, the essential elements of one challenged offense also establish the essential elements of another challenged offense." (emphasis in original).

Upon comparing the essential elements necessary to convict Castillo of possession of cocaine with those necessary to convict him of dealing cocaine, we conclude they are not the same. Possession involves knowingly or intentionally possessing cocaine, while dealing, as here charged, involves the knowing delivery of cocaine.[10]

However, even if a double jeopardy violation does not exist when comparing the essential elements, a violation may still have occurred if the actual evidence presented at trial demonstrates that each offense was not established by separate and distinct facts. The "defendant must demonstrate a reasonable possibility that the evidentiary facts used by the fact-finder to establish the essential elements of one offense may also have been used to establish

the essential elements of a second challenged offense." *Richardson, supra,* 717 N.E.2d at 53.

Here, evidence was presented at trial that Salmons visited Castillo's home and that Castillo sold and delivered cocaine to Salmons, thus, constituting the crime of dealing in cocaine. Evidence was also presented that later that same day, upon executing the search warrant to search Castillo's home, the police observed an unknown person toss almost 15 grams of cocaine out a bedroom window. Upon entering the home, Castillo was observed exiting the bedroom from which the cocaine had been thrown. This evidence was sufficient to establish that Castillo possessed cocaine. The evidence adduced at trial was sufficient for the jury to conclude that Castillo had committed two separate crimes at two different times on the same day. We, therefore, hold that convictions for both crimes did not violate the standards of double jeopardy.

## II. Jury Unanimity

Castillo next asserts that it was error to allow the jury to hear evidence of two separate episodes of dealing in cocaine when he was charged with only one. He further contends that the trial court should have instructed the jury that they were required to unanimously agree upon which act supported the conviction for dealing in cocaine.

Recently, in *Richardson v. United States* (1999) 526 U.S. 813, 119 S.Ct. 1707, 143 L.Ed.2d 985, the Supreme Court held that a jury must unanimously agree regarding which crime a defendant committed. The facts in that case, however, were markedly different from the facts in the instant case. There, Richardson was charged with violating a federal law mak-

---

ed, within one thousand (1000) feet of school property...." Record at 1.

**10.** If the dealing offense were charged pursuant to I.C. 35–48–4–1(2) instead of I.C. 35–48–4–1(1)(c), the possession required for each

offense would be the same and therefore the possession element would be identical for each offense. As noted, however, Castillo was charged with actual delivery of the cocaine rather than possession with intent to deliver.

ing it a crime for any person to engage " 'in a continuing criminal enterprise.' " *Id.* at 815, 119 S.Ct. 1707. (quoting 21 U.S.C. § 848(a)). The federal law defined a " 'continuing criminal enterprise' " as a violation of the drug laws where that " 'violation is a part of a continuing series of violations.' " *Id.* (quoting 21 U.S.C. § 848(c)).

The Court determined that it was error for the trial court to instruct the jury that they must agree that Richardson committed at least three violations, but that they did not have to agree upon which three violations he committed. *Id.* at 816, 119 S.Ct. 1707. The Court reasoned that it would be unfair to allow juries to avoid discussion of specific factual considerations when determining whether a defendant committed a violation. *Id.* at 819, 119 S.Ct. 1707. To do so would increase the danger that juries may conclude "that where there is smoke there must be fire," and to convict the defendant because he is a bad person. *Id.* at 819, 119 S.Ct. 1707.

■ Although factually different, that same reasoning is applicable in this case.[11] Here, the State chose to charge Castillo with one act of dealing in cocaine even though there was evidence that Castillo committed two separate acts of dealing in cocaine. The dealing charge was unspecific and only charged that "on or about February 6, 1998, in Cass County, State of Indiana, Fidel C. Castillo did knowingly deliver cocaine, pure or adulterated, within one thousand (1000) feet of school property...." Record at 1. Over Castillo's objection, the state was permitted to present evidence of both incidents.[12] Furthermore, in closing argument, the prosecutor told the jury they had "a choice" in convicting Castillo of dealing in cocaine. Record at 1260. He told them he had proved it twice but that they only had to find it either happened at Garcia's home or later at Castillo's home.

The trial court did not instruct the jurors that they were required to render a unanimous verdict regarding which dealing crime Castillo committed. In fact, the trial court, in ruling on Castillo's continuing objection to the evidence of the earlier dealing crime, stated that because there was no specificity as to either of the dealing counts, the prosecution "could prove it as to one or the other ... [o]r both." Record at 652. It is possible, given these facts, that some jurors believed that Castillo committed the earlier dealing crime at Garcia's home while other jurors believed that Castillo committed the dealing viola-

---

11. In a factually analogous case, *Brinkman v. State* (1877) 57 Ind. 76, 1877 WL 6422, our Supreme Court addressed the issue of double jeopardy. In *Brinkman*, the defendant was charged twice with selling alcohol to a minor on the same day. The charges were unspecific about the time and merely gave the date. The defendant was tried and convicted on the first charge and the next day tried and convicted of the second charge. The Court examined the record and found that testimony was presented during both trials that the defendant had sold alcohol twice to the same minor. In ordering a new trial, the Court said that when the prosecution gave evidence of "both sales on each indictment, both convictions may have been secured for the same selling." *Id.* at 79. Contrary to our position today, the Court further stated that if "the jury, on the trial upon the first indictment, having the evidence as to both alleged sales before them, found that one of said alleged sales was not satisfactorily established, but

that the other was; they would have been justified in returning a verdict of guilty." *Id.* While it is true that this would not violate Brinkman's right to be free of double jeopardy, we hold today that it would violate his right to a unanimous verdict because one or more of the jurors may have reached his individual conclusion of guilt premised upon the particular sale which other of the jurors found not established.

12. Castillo also correctly contends that allowing extraneous evidence of uncharged crimes in this manner is a means of bypassing Ind. Evidence Rule 404(b) which prohibits evidence of other crimes, wrongs, or acts except under narrowly construed exceptions. Improperly admitted evidence of this type may have a prejudicial impact on a juror and contribute to a guilty verdict. *Sundling v. State* (1997) Ind.App., 679 N.E.2d 988, 994, *reh'g denied.*

tion at his home later that same day. Consequently, it is possible that the jury's verdict of guilty regarding the charge of dealing in cocaine was not unanimous. We, therefore, conclude that Castillo's conviction for dealing in cocaine should be vacated and, in this regard, we remand this cause to the trial court for further proceedings.

### III. Sufficiency of the Evidence

Castillo maintains that there was insufficient evidence adduced at the trial to sustain his conviction for possession of cocaine. When addressing a claim of insufficient evidence, we neither reweigh the evidence nor judge the credibility of witnesses. *Winters v. State* (1999) Ind.App., 719 N.E.2d 1279, 1281.

■ To convict Castillo of possession of cocaine, the State had to prove that Castillo knowingly or intentionally possessed cocaine. I.C. 35–48–4–6 (Burns Code Ed. Repl.1998). A conviction for possession of cocaine may be proved by either actual or constructive possession. *Macklin v. State* (1998) Ind.App., 701 N.E.2d 1247, 1251. Constructive possession is the actual knowledge of the presence and illegal character of the contraband and the intent and capability to maintain dominion and control over it. *Godar v. State* (1994) Ind.App., 643 N.E.2d 12, *reh'g denied, trans. denied.*

■ Castillo relies upon *Greely v. State* (1973) 158 Ind.App. 212, 301 N.E.2d 850, which held that a homeowner was not criminally punishable for stolen goods found in the trash outside his home where no evidence proved that he had at least some knowledge of the presence of the material. The facts of that case, however, differ greatly from the facts in the instant case. Here, the police observed someone throw a package, later determined to be cocaine, out of an upstairs bedroom win-

dow. A few moments later, when the police entered Castillo's apartment, Castillo was leaving that bedroom. This evidence was sufficient for the jury to reasonably infer that it was Castillo who had thrown the package of cocaine.

### IV. Search Warrant

Castillo finally asserts that the trial court erred when it denied his motion to suppress evidence recovered from his apartment because the search warrant was invalid. Castillo contends that suppression was required because the testimony[13] provided to the judge upon which the search warrant was issued was false. During the hearing, both Officer Burgess and the prosecutor referred to the confidential informant as a male when Salmons is, in fact, a female.

■ "In deciding whether to issue a search warrant, '[t]he task of the issuing magistrate is simply to make a practical, commonsense decision whether, given all the circumstances set forth in the affidavit ... there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" *Jaggers v. State* (1997) Ind., 687 N.E.2d 180, 181 (quoting *Illinois v. Gates* (1983) 462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527). If a search warrant is issued upon the basis of testimony which is later found to be false, "the sufficiency of the affidavit must be evaluated with the false statements excised." *Jewell v. State* (1996) Ind.App., 672 N.E.2d 417, 422, *trans. denied.* If there is sufficient probable cause with the false statements excised, then the search warrant is valid. *Utley v. State* (1992) Ind., 589 N.E.2d 232, 236, *cert. denied* (1993) 506 U.S. 1058, 113 S.Ct. 991, 122 L.Ed.2d 142.

■ In this case, Officer Burgess knew that Salmons, the confidential informant, was female. However, he continually re-

---

**13.** In this case, in obtaining the search warrant, Officer Burgess testified in open court rather than by affidavit.

ferred to her as a male during the probable cause hearing for the search warrant. Although it is troubling that this would take place, we cannot say as a matter of law that this rendered the search warrant invalid. Furthermore, there is no evidence to conclude that Officer Burgess testified falsely or with reckless disregard for the truth concerning any material facts. He stated that he had searched Salmons before giving her money to conduct the controlled buy and he personally escorted her to Detective Mote's car. He further testified that Detective Mote drove Salmons to Garcia's home first and Castillo's home later. Detective Burgess overheard both transactions by wire, and when Detective Mote returned Salmons to Officer Burgess, Officer Burgess searched her again. There is no evidence that Officer Burgess testified falsely with regard to these material facts. This information was sufficient to provide probable cause and it was irrelevant to the probable cause determination whether Salmons was a man or a woman.

 Castillo also argues that the false information regarding Salmons' gender calls into question the validity of the controlled buy. In *Flaherty v. State* (1982) Ind.App., 443 N.E.2d 340, 341, we explained the mechanics of a controlled buy:

> " 'A controlled buy consists of searching the person who is to act as the buyer, removing all personal effects, giving him money with which to make the purchase, and then sending him into the residence in question. Upon his return he is again searched for contraband. Except for what actually transpires within the residence, the entire transaction takes place under the direct observation of the police. They ascertain that the buyer goes directly to the residence and returns directly, and they closely watch all entrances to the residence throughout the transaction.' "

(quoting *Mills v. State* (1978) 177 Ind.App. 432, 434, 379 N.E.2d 1023, 1026.) So long as the "controls are adequate, the affiant's personal observation of a controlled buy may be sufficient as grounds for finding probable cause." *Methene v. State* (1999) Ind.App., 720 N.E.2d 384, 390.

Castillo claims that Officer Burgess deliberately misrepresented Salmons' gender because of the implication that it is impossible for a male officer to conduct a thorough search of a female confidential informant. Both Salmons and Officer Burgess conceded that a strip search was not conducted upon Salmons before or after the controlled buy.[14] However, both also testified that Salmons was carefully searched to ensure that she did not have any of her own money or contraband in her possession. She was searched before and after the buys[15] and either Officer Burgess or Detective Mote monitored Salmons visually or by wire during the course of the buys. We conclude that the search warrant was valid and the motion to suppress was properly denied.

The judgment is affirmed in part, reversed in part and remanded to the trial court for further proceedings not inconsistent with this opinion.

BAILEY, J., and VAIDIK, J., concur.

**14.** In *Hawkins v. State* (1993) Ind., 626 N.E.2d 436, 441, the Appellant contended that the officer supervising the controlled buy lacked sufficient personal knowledge to testify because a body cavity search was not conducted prior to the controlled buy. Our Supreme Court held that the officer's thorough search of the informant was sufficient for the officer to form the opinion that the informant did not possess any contraband before she entered the residence.

**15.** With good cause, the propriety of searches of confidential informants by officers of the opposite gender may be seriously questioned. However, such procedure does not here dictate suppression of the evidence of the controlled buy.