**Fred GIDDINGS, Appellant–Petitioner,**

v.

**STATE of Indiana, Appellee–Respondent.**

No. 40A01–0909–PC–455.

Court of Appeals of Indiana.

June 25, 2010.

---

Susan K. Carpenter, Public Defender of Indiana, Indianapolis, IN, C. Brent Martin, Deputy Public Defender, Attorneys for Appellant.

Gregory F. Zoeller, Attorney General of Indiana, Henry A. Flores, Jr., Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

BARTEAU, Senior Judge.

### STATEMENT OF THE CASE

Defendant–Appellant Fred L. Giddings appeals the denial of his petition for post-conviction relief. We affirm.

### ISSUE

Giddings raises one issue for our review, which we restate as: Whether Giddings' appellate counsel was ineffective because she did not raise on direct appeal the issue of unanimous verdicts.

### FACTS AND PROCEDURAL HISTORY

On October 19, 1999, the State charged Giddings with a single count of child molesting, a Class A felony; two counts of child molesting, as Class B felonies; and two counts of child molesting as Class C felonies. The jury found Giddings guilty on all counts, and the trial court sentenced Giddings to fifty years on the Class A felony, twenty years each on the Class B felonies, and eight years each on the Class C felonies. The Class B felonies were ordered to be served consecutively with the Class A felony and with each other. The Class C felonies were ordered to be served concurrently with the other convic-tions, for an aggregate sentence of ninety years in the Department of Correction.

On direct appeal, this court affirmed Giddings' convictions and sentence in an unpublished opinion. See *Giddings v. State*, No. 40A04–0010–CR–435, 756 N.E.2d 1103 (September 28, 2001), *trans. denied*. In the direct appeal, we found the following facts:

[I]n 1995 Fred Giddings and his wife Wanda resided in Jennings County in a trailer located on Giddings' mother's property ... [They were visited by relatives] R.K., S.K., and J.K. (collectively, "the minor children"), who are siblings. The minor children would spend the night with Giddings and [his wife] at Giddings' trailer almost every weekend. During their visits to Giddings' trailer, the minor children would play strip poker with Giddings, and J.K. and S.K. would also engage in sexual acts with Giddings, in exchange for drugs, alcohol, and cigarettes.

In October 1996, Giddings and Wanda separated. Following their divorce, Giddings sold his trailer and moved into a one-room storage shed behind his mother's house, which he and R.K. nicknamed "the love shack."

S.K. testified that she was eleven or twelve years old when she first engaged in sexual acts with Giddings. S.K. testified that during the course of her visits to Giddings' trailer, she had sexual intercourse with Giddings more than fifty times and that during such intercourse, Giddings would touch her breasts with his hands. S.K. also testified that she performed oral sex on Giddings four or five times and that Giddings performed oral sex on her five or six times. S.K. testified that she would engage in the sexual acts with Giddings so that he would give her drugs and alcohol.

J.K. testified that during her visits to Giddings' trailer, she performed oral sex on Giddings. J.K. further testified that Giddings also performed oral sex on her and that he would "put his finger in [her] private area." Additionally, J.K. stated that she observed Giddings having sex with S.K. on one occasion. When asked why she engaged in such acts with Giddings, J.K. said she did so because Giddings would provide her with alcohol, marijuana, and cigarettes. J.K. further testified that if she did not do what Giddings wanted, Giddings would make up a lie so she would get in trouble with her stepfather.

R.K. was born on February 17, 1986. According to R.K., after a night of drinking with Giddings at "the love shack," R.K. fell asleep on the couch. R.K. testified that "when [he] woke up [Giddings] was on top of [him] and [he] was stomach down on the couch.... And we were having anal sex." R.K. stated that he tried to get up, but Giddings put his hand on his back and pushed him down. R.K. also testified that he saw Giddings having sexual intercourse with S.K. three to four times and that he also witnessed Giddings performing oral sex on S.K. two to three times.

Memorandum Decision at 2–3.

After the denial of his direct appeal, Giddings filed a petition for post-conviction relief alleging that he received ineffective assistance of appellate counsel because counsel failed to challenge the Class B felony child molesting convictions on the grounds of a potentially non-unanimous verdict. The post-conviction court issued findings of fact and conclusions of law in support of its denial of Giddings' petition. Giddings now appeals this denial.

## DISCUSSION AND DECISION

On appeal of the denial of his petition for post-conviction relief, Giddings alleges that his appellate counsel was ineffective because she failed to raise the issue of a non-unanimous verdict. Giddings recognizes that he must prove deficient performance by appellate counsel which results in prejudice that, but for appellate counsel's error, creates a reasonable probability that the outcome of the direct appeal would have been different. *See Bieghler v. State*, 690 N.E.2d 188, 193 (Ind. 1997), *cert. denied*, 525 U.S. 1021, 119 S.Ct. 550, 142 L.Ed.2d 457 (1998). Giddings notes that *Bieghler* identifies three types of alleged appellate counsel ineffectiveness: (1) denying access to an appeal; (2) failing to raise a viable issue; and (3) failing to make a cogent argument. *See id.* at 193–95. Giddings claim is based on the second category, appellate counsel's failure to raise a viable claim. He alleges that the non-unanimous verdict issue was significant and obvious on the face of the record and clearly stronger than the issues raised on direct appeal. *See id.* at 194.

The State points out that Giddings has not challenged the effectiveness of trial counsel, who failed to preserve the issue of unanimity of the verdicts either by objection to the verdict forms or to the verdict. See *Scuro v. State*, 849 N.E.2d 682, 687–88 (Ind.Ct.App.2006), *trans. denied*. When such objections are not raised at trial, then the effectiveness of trial counsel's performance must be raised on either direct appeal or on appeal of the denial of a petition for post-conviction relief. Giddings' counsel on direct appeal cannot be ineffective for failing to raise an issue involving trial counsel's performance when post-conviction appellate counsel does not question such performance or raise the issue of ineffectiveness of direct appellate counsel for failure to raise ineffectiveness of trial counsel. In short, the issue of the propri-

ety of allegedly non-unanimous verdicts has been waived. See *id.* at 687.

Waiver notwithstanding, we conclude that appellate counsel on direct appeal was not ineffective. The basis of Giddings' appeal is that appellate counsel failed to argue the unanimity issue pursuant to our holding in *Castillo v. State,* 734 N.E.2d 299 (Ind.Ct.App.2000), *summarily affirmed on transfer.*

In *Castillo,* a panel of this court grounded its holding on *Richardson v. United States,* 526 U.S. 813, 119 S.Ct. 1707, 143 L.Ed.2d 985 (1999). Indeed, *Richardson* was the sole authority cited by the panel. The panel held:

> Recently, in [*Richardson*], the Supreme Court held that a jury must unanimously agree regarding which crime a defendant committed. The facts in that case, however, were markedly different from the facts in the instant case. There, Richardson was charged with violating a federal law making it a crime for a person to engage "in a continuing criminal enterprise." The federal law defined a "continuing legal enterprise as a violation of the drug laws where that violation is a part of a continuing series of violations."
>
> The Court determined that it was error for the trial court to instruct the jury that they must agree that Richardson committed at least three violations, but that they did not have to agree upon which three violations he committed. The Court reasoned that it would be unfair to allow juries to avoid discussion of specific factual considerations when determining whether a defendant committed a violation. To do so would increase the danger that juries may con-

clude "that where there is smoke there must be fire," and to convict the defendant because he is a bad person.

*Castillo,* 734 N.E.2d at 304. The *Castillo* panel noted that the State had chosen to charge Castillo with one act of dealing in cocaine "even though there was evidence that Castillo committed two separate acts of dealing in cocaine." *Id.* The panel further noted that the charge was "unspecific" and that the prosecutor told the jury in closing argument that they "had a choice in convicting Castillo of dealing in cocaine." *Id.* The panel then concluded, based on the reasoning of *Richardson,* that "it [was] possible, given these facts, that some jurors believed that Castillo committed the earlier dealing crime … while other jurors believed that Castillo committed the dealing violation at his home later that same day." *Id.* at 304–05. The panel concluded that the conviction should be vacated, as it was possible that "the jury's verdict of guilty regarding the charge of dealing in cocaine was not unanimous." *Id.* at 305.

In *Richardson,* the United States Supreme Court held that state courts have sometimes permitted jury disagreement in cases involving sexual crimes against a minor. The Court noted that these types of crimes involve "special difficulties of proving individual underlying criminal acts." 119 S.Ct. at 1712. The Court further noted that the cases "are not federal but state, where this Court has not held that the Constitution imposes a jury-unanimity requirement." [1]

We have recognized the "special difficulties" arising in the charging of sexual offenses against a minor, noting the particu-

---

1. We recognize that *Richardson* is discussing the application of "continuing criminal enterprise" statutes. However, because the *Castillo* panel applied the *Richardson* holding on the basis of charging informations, final arguments, and instructions, we must address the limitations of that holding.

lar difficulty that arises when a child is subjected to sexual abuse over a period of time. See e.g., *Buzzard v. State*, 712 N.E.2d 547, 551 (Ind.Ct.App.1999), *trans. denied.* We have held that "the time of the offense is not of the essence" in cases involving child molesting. *Id.* (citing *Phillips v. State*, 499 N.E.2d 803, 805 (Ind.Ct. App.1986)). We have further held that the "exact date of the offense becomes important only in circumstances where the victim's age at the time of the offense falls at or near the dividing line between classes of felonies." *Id.* There is good reason for the aforementioned holdings, as our supreme court has noted that it is "difficult for children to remember specific dates, particularly when the incident is not immediately reported as is often the situation in child molesting cases." See *Barger v. State*, 587 N.E.2d 1304, 1307 (Ind.1992). These "special difficulties" do not disappear at the time the jury determines what the State has proven; indeed, the *Richardson* court recognized the special difficulties of proving individual criminal acts. We hold that *Castillo* is not applicable in child molest cases, and appellate counsel was not ineffective for not raising the case and the issue of unanimous verdicts.[2]

Affirmed.

MATHIAS, J., concurs.

BARNES, J., concurs in result without opinion.

---

**2.** Giddings notes that the *Scuro* court favorably cited *Castillo*. This use of *Castillo* came after the court had already waived the issue of a non-unanimous jury verdict and had vacated the two disseminating harmful material charges in question on other grounds.