FILED

Jun 24 2020, 7:04 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court



ATTORNEY FOR APPELLANT

Denise L. Turner
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Ian McLean
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Montel Giden,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

June 24, 2020

Court of Appeals Case No.
19A-CR-2891

Appeal from the Shelby Superior
Court

The Honorable R. Kent Apsley,
Judge

Trial Court Cause No.
73D01-1908-F6-417

**Tavitas, Judge.**

## Case Summary

[1]   Montel Giden appeals his two convictions for escape, as Level 6 felonies.  We
affirm.

# Issues

Giden raises three issues, which we revise and restate as:

    I.      Whether the escape statute violates the Proportionality Clause of Article 1, Section 16 of the Indiana Constitution.

    II.     Whether fundamental error occurred as a result of the jury instructions.

    III.    Whether the evidence is sufficient to sustain Giden's conviction for escape related to the July 24, 2019 incident.

# Facts

On July 12, 2019, the State charged Giden with criminal recklessness, a Level 5 felony, and pointing a firearm, a Level 6 felony.[1] Giden posted bond and, on July 12, 2019, was placed on home detention as a condition of his pretrial release. The home detention order required Giden to "be confined to [his] home at all times" except for certain approved reasons. Exhibits p. 3. The order also required Giden to "abide by a written schedule prepared by [his] community corrections program specifically setting forth the limited times when [he] may be absent from [his] home and the specific locations [he is] allowed to be during scheduled absences." *Id.* The order noted that Giden may be subject to prosecution for the crime of escape for any violation of the home detention order. Shelby County Community Corrections ("SCCC") personnel explained to Giden the process of completing and returning the weekly

---

[1] Giden was later acquitted of these charges.

schedules by 8:00 p.m. on Sunday evenings. Even a trip to SCCC must be listed on the weekly schedule. Participants are also given a number to call in emergency situations. Giden received his GPS monitoring equipment on July 15, 2019.

[4] Giden's weekly schedule for July 24, 2019, to July 30, 2019, did not list any home absences for July 24, 2019. On Wednesday, July 24, 2019, SCCC received an alert that Giden left his home.[2] GPS records indicated that Giden left his home at 2:30 p.m., traveled to SCCC, and returned home at 2:52 p.m. According to Giden's testimony, he went to SCCC to get permission to see an attorney, and he was told at SCCC "that would not be allowed." Tr. Vol. II p. 198. SCCC personnel again explained to Giden the need to have all absences from his home recorded on his weekly schedule.

[5] Giden's weekly schedule for August 21, 2019, to August 27, 2019, did not list any home absences for August 25, 2019. On Sunday, August 25, 2019, SCCC received another alert that Giden left his home. GPS records show that, between 3:56 p.m. and 8:50 p.m., Giden left and returned to his residence four times and that he visited several addresses in Shelbyville. When questioned by SCCC personnel regarding his whereabouts that day, Giden claimed that he had to go to CVS to get an inhaler. The GPS records, however, did not indicate

---

[2] At the beginning of his home detention, Giden did not have a telephone. According to SCCC, Giden received his telephone back on August 7, 2019, but Giden claims that he received his telephone back on August 28, 2019, and that the telephone he received on August 7, 2019, did not work. Giden did not have a vehicle or bicycle, and his main mode of transportation was walking.

that Giden went to CVS.  According to Giden's testimony, he left his residence to drop off his weekly schedule at SCCC and to attempt to borrow an inhaler. Giden had not previously informed SCCC that he needed an inhaler.

On August 28, 2019, the State charged Giden with two counts of escape, as Level 6 felonies.  The jury found Giden guilty as charged.  The trial court sentenced Giden to an aggregate sentence of 365 days, with 180 days executed in the Shelby County Jail and the remainder of the sentence suspended to probation.  Giden now appeals.

# Analysis

## I. Proportionality Clause

Giden argues that the escape statute violates the Proportionality Clause of the Indiana Constitution.  As an initial matter, the State argues that Giden waived this argument by failing to raise it in a motion to dismiss.  The Indiana Supreme Court has held that such constitutional claims are waived where they are not raised at trial.  *Layman v. State*, 42 N.E.3d 972, 976 (Ind. 2015).  The Court also noted, however that "appellate courts are not prohibited from considering the constitutionality of a statute even though the issue otherwise has been waived." *Id.*  Indeed, we may exercise our discretion to review a constitutional claim on our own accord.  *Id.*  For example, in *Poling v. State*, 853 N.E.2d 1270, 1274 (Ind. Ct. App. 2006), we addressed a defendant's challenge of a criminal statute under the Proportionality Clause after noting that a party may raise the issue of a statute's constitutionality at any stage of a proceeding and that this Court may

also raise the issue sua sponte. Accordingly, we will address Giden's argument despite his waiver.

[8] The Proportionality Clause mandates that "[a]ll penalties shall be proportioned to the nature of the offense." Ind. Const. Art. 1, § 16. Challenges to the constitutionality of a statute begin with a presumption in favor of the statute's constitutionality and will not be overcome absent a clear showing to the contrary. *White v. State*, 971 N.E.2d 203, 207-08 (Ind. Ct. App. 2012), *trans. denied*. "[B]ecause criminal sanctions are a legislative prerogative, separation-of-powers principles require a reviewing court to afford substantial deference to the sanction the legislature has chosen." *Id.* Accordingly, we will not disturb the legislative determination of the appropriate penalty for criminal behavior except upon a showing of clear constitutional infirmity. *Id.*

[9] The protections provided by Article 1, Section 16 are "narrow." *Knapp v. State*, 9 N.E.3d 1274, 1289 (Ind. 2014), *cert. denied*, 574 U.S. 1091, 135 S. Ct. 978 (2015). "[A] finding of unconstitutionality should be reserved for 'penalties so disproportionate to the nature of the offense as to amount to clear constitutional infirmity sufficient to overcome the presumption of constitutionality afforded to [legislative] decisions about penalties.'" *Poling*, 853 N.E.2d at 1275 (quoting *State v. Moss-Dwyer*, 686 N.E.2d 109, 112 (Ind. 1997)). The constitutional provision is violated "only when the criminal penalty is not graduated and proportioned to the nature of the offense." *Knapp v. State*, 9 N.E.3d 1274, 1289-90 (Ind. 2014); *see also Shoun v. State*, 67 N.E.3d 635, 641 (Ind. 2017). Though we "cannot set aside a legislatively sanctioned penalty merely because it seems

too severe," Article 1, Section 16 requires us to review whether a sentence is not only within statutory parameters, but also constitutional as applied to the particular defendant. *Knapp*, 9 N.E.3d at 1290.

[10] Giden was convicted pursuant to Indiana Code Section 35-44.1-3-4(b), which provides: "A person who knowingly or intentionally violates a home detention order or intentionally removes an electronic monitoring device or GPS tracking device commits escape, a Level 6 felony." Giden argues that the escape statute, which makes the violation of a home detention order a Level 6 felony, violates the Proportionality Clause because another statute, Indiana Code Section 35-38-2.5-13, makes the unauthorized absence from home detention a Class A misdemeanor.

[11] The unauthorized absence from home detention statute, Indiana Code 35-38-2.5-13, provides:

An offender who:

(1) leaves the offender's home in violation of section 6(1) of this chapter or without documented permission from the supervising entity;

(2) remains outside the offender's home in violation of section 6(1) of this chapter or without documented permission from the supervising entity; or

(3) travels to a location not authorized under section 6(1) of this chapter or not authorized in writing by the supervising entity;

commits unauthorized absence from home detention, a Class A misdemeanor.

We have held that this statute "applies only in cases where the offender has been placed on home detention *as a condition of probation*." *Gordon v. State*, 981 N.E.2d 1215, 1220 (Ind. Ct. App. 2013) (emphasis added); *see* Ind. Code § 35-38-2.5-5. Here, however, Giden was subject to home detention as a condition of his pretrial release, not as a condition of probation. As such, Indiana Code 35-38-2.5-13 was not applicable to Giden's offense.

[12] According to Giden, "common sense and sound logic dictate that [Indiana Code Section 35-38-2.5-13] should apply equally to a person placed on home detention as a condition of pre-trial release in order to comport with Indiana's Proportionality Clause." Appellant's Br. p. 11. Giden points out that a "presumptively innocent defendant" on home detention as a condition of pretrial release "can receive a harsher penalty" than an "already-convicted offender." *Id.*

[13] The State points out that the escape statute and the unauthorized absence from the home detention statute contain different elements. *See Matthews v. State*, 944 N.E.2d 29, 33 (Ind. Ct. App. 2011) ("Because the three crimes do not have identical elements, the proportionality clause of our Constitution is not offended if our legislature assigns different sentences to them."). The State also contends that the different statutes ensure that a lower-level offense option is available to defendants on probation where the violation of a probationary term

"likely means additional sanctions for a defendant, including revocation of all or part of a suspended sentence." Appellee's Br. p. 18.

[14] We agree with the State that Giden has failed to overcome the strong presumption in favor of the statute's constitutionality and has failed to make a clear showing of a constitutional infirmity. The General Assembly's choice of sanctions is entitled to substantial deference, and the State has pointed out a reasonable explanation for the differences in sanctions between the two statutes. Under these circumstances, Giden has failed to demonstrate that the escape statute violates the Proportionality Clause.[3]

## II. Jury Instruction

[15] Giden argues that the trial court erred in instructing the jury. The manner of instructing a jury is left to the sound discretion of the trial court. *Coy v. State*, 999 N.E.2d 937, 942-43 (Ind. Ct. App. 2013). When reviewing a trial court's decision to refuse or give jury instructions, this Court "considers: (1) whether the instruction correctly states the law; (2) whether there is evidence in the

---

[3] Although Giden's Proportionality Clause argument fails, we note our concern with the outcome here. Giden was found not guilty of the original charges for which he was placed on pretrial home detention, but he now has two felony convictions for relatively minor violations of the pretrial home detention order. We find it problematic that the escape statute treats relatively minor violations, such as Giden's violations, the same as the violations of a defendant who absconds from pretrial home detention. We cannot find the statute unconstitutional merely because it seems too severe, *see Knapp*, 9 N.E.3d at 1290; we encourage the General Assembly, however, to consider amending the escape statute to include staggered penalties based on the type of violation.

record to support the giving of the instruction; and (3) whether the substance of the tendered instruction is covered by other instructions which are given." *Id.*

[16] Giden argues that the jury could have based his conviction for escape related to August 25, 2019, upon any of his four absences from his house and that it is possible different jurors based their guilty verdict on different acts. According to Giden, the trial court should have instructed the jury that their verdict had to be unanimous. Giden contends that we should vacate his conviction for escape related to August 25, 2019, due to "the uncertainty regarding the unanimity of the verdict and the lack of a proper instruction from the court." Appellant's Br. p. 18.

[17] In support of his argument Giden relies on *Castillo v. State*, 734 N.E.2d 299 (Ind. Ct. App. 2000), *summarily aff'd*, 741 N.E.2d 1196 (Ind. 2001). In *Castillo*, the State charged the defendant with one act of dealing in cocaine even though there was evidence presented that the defendant committed two separate acts of dealing in cocaine on that same day. Over the defendant's objection, the State was permitted to present evidence of both incidents. In closing argument, the State told the jury they had "a choice" in convicting the defendant of dealing in cocaine. *Castillo,* 734 N.E.2d at 304. The State told the jury it had proved both incidents but that the jury only had to find either incident occurred.

[18] This Court held:

> The trial court did not instruct the jurors that they were required to render a unanimous verdict regarding which dealing crime Castillo committed. . . . It is possible, given these facts, that

some jurors believed that Castillo committed the earlier dealing crime at Garcia's home while other jurors believed that Castillo committed the dealing violation at his home later that same day. Consequently, it is possible that the jury's verdict of guilty regarding the charge of dealing in cocaine was not unanimous. We, therefore, conclude that Castillo's conviction for dealing in cocaine should be vacated and, in this regard, we remand this cause to the trial court for further proceedings.

*Id.* at 304-05.

[19] Following *Castillo*, our Supreme Court decided *Baker v. State*, 948 N.E.2d 1169 (Ind. 2011). The Court noted "this jurisdiction has long required that a verdict of guilty in a criminal case 'must be unanimous.'" *Baker*, 948 N.E.2d at 1173-74 (quoting *Fisher v. State*, 259 Ind. 633, 291 N.E.2d 76, 82 (1973)). Citing *Castillo*, the Court held: "a disjunctive instruction, which allows the jury to find a defendant guilty if he commits either of two or more underlying acts, either of which is in itself a separate offense, is fatally ambiguous because it is impossible to determine whether the jury unanimously found that the defendant committed one particular offense." *Id.* at 1175. Accordingly,

the State may in its discretion designate a specific act (or acts) on which it relies to prove a particular charge. However if the State decides not to so designate, then the jurors should be instructed that in order to convict the defendant they must either unanimously agree that the defendant committed the same act or acts or that the defendant committed all of the acts described by the victim and included within the time period charged.

*Id.* at 1177.

[20] In *Baker*, however, the Court noted that the defendant failed to object to the trial court's instruction and also failed to offer an instruction of his own. Accordingly, the Court held that the issue was waived. *See id.* at 1178 ("[A] defendant who fails to object to an instruction at trial waives any challenge to that instruction on appeal."). The Court then considered whether fundamental error occurred. Noting that the only issue was the credibility of the alleged victims, the Court concluded that the defendant failed to demonstrate that the instruction error "so prejudiced him that he was denied a fair trial." *Id.* at 1179.

[21] Here, Giden did not tender a jury instruction based upon *Baker* and did not object to the jury instructions on this basis. Accordingly, Giden's argument is waived. As in *Baker*, we will address whether the failure to give a *Baker* instruction resulted in fundamental error. "In order to be fundamental, the error must represent a blatant violation of basic principles rendering the trial unfair to the defendant and thereby depriving the defendant of fundamental due process." *Id.* at 1178. "The error must be so prejudicial to the defendant's rights as to make a fair trial impossible. *Id.* "In considering whether a claimed error denied the defendant a fair trial, we determine whether the resulting harm or potential for harm is substantial. *Id.* at 1178-79. Harm is not shown by the fact that the defendant was ultimately convicted. *Id.* Rather, harm is determined by whether the defendant's right to a fair trial was detrimentally affected by the denial of procedural opportunities for the ascertainment of truth to which he would have been entitled. *Id.*

[22] The jury here was instructed that its verdict must be unanimous. *See* Tr. Vol. III p. 27 ("To return a verdict, each of you must agree to it."); *id.* at 28 (instructing the foreperson, "Do not sign any verdict form for which there is not unanimous agreement."). During closing arguments, Giden argued that he was trying to follow the home detention rules "as best he could" and that he left his house only to go to SCCC and to obtain an inhaler, which was an emergency situation. Tr. Vol. III p. 9. Giden did not dispute that he repeatedly left his residence on August 25, 2019. The only issue for the jury was whether Giden's behavior qualified as escape. Under these circumstances, we cannot say that the error from the lack of a *Baker* instruction was so prejudicial to Giden's rights as to make a fair trial impossible. Giden has failed to demonstrate fundamental error.

### III. Sufficiency

[23] Giden challenges the sufficiency of the evidence to sustain his conviction for escape, a Level 6 felony, related to the July 24, 2019, incident. When a challenge to the sufficiency of the evidence is raised, "[w]e neither reweigh evidence nor judge witness credibility." *Gibson v. State,* 51 N.E.3d 204, 210 (Ind. 2016) (citing *Bieghler v. State,* 481 N.E.2d 78, 84 (Ind. 1985), *cert. denied*), *cert. denied.* Instead, "we 'consider only that evidence most favorable to the judgment together with all reasonable inferences drawn therefrom.'" *Id.* (quoting *Bieghler,* 481 N.E.2d at 84). "We will affirm the judgment if it is supported by 'substantial evidence of probative value even if there is some conflict in that evidence.'" *Id.* (quoting *Bieghler,* 481 N.E.2d at 84)*; see also*

*McCallister v. State,* 91 N.E.3d 554, 558 (Ind. 2018) (holding that, even though there was conflicting evidence, it was "beside the point" because that argument "misapprehend[s] our limited role as a reviewing court"). "We will affirm the conviction unless no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt." *Love v. State,* 73 N.E.3d 693, 696 (Ind. 2017) (citing *Drane v. State,* 867 N.E.2d 144, 146 (Ind. 2007)).

[24] Indiana Code Section 35-44.1-3-4(b) provides: "A person who knowingly or intentionally violates a home detention order . . . commits escape, a Level 6 felony." Giden argues that the evidence is insufficient to sustain his conviction for escape related to the July 24, 2019 incident. The State demonstrated that Giden was provided with the home detention rules, including the requirement that he provide a weekly schedule listing all times that he would be out of his residence. The process for filling out the weekly schedule was explained to Giden in detail. On July 24, 2019, Giden left his residence without permission, walked to SCCC, asked an SCCC employee for permission to leave his residence to see an attorney, and returned home. A SCCC employee explained at the trial that even trips to SCCC must be on the weekly schedule. The employee testified: "If we have everyone wanting to come to our office whenever they want and it's not on their schedule, we're gonna have hundreds of alarms going off on a daily basis." Tr. Vol. II p. 100. A reasonable jury could have found that the State proved Giden knowingly or intentionally violated a home detention order beyond a reasonable doubt. The evidence is sufficient to sustain Giden's conviction. *See, e.g., Keith v. State*, 91 N.E.3d 1029,

1032 (Ind. Ct. App. 2018) (holding the evidence was sufficient to sustain the defendant's conviction for escape), *trans. denied*.

## Conclusion

Giden has failed to demonstrate that his convictions violate the Proportionality Clause or that fundamental error occurred as a result of the jury instructions. Moreover, the evidence is sufficient to sustain Giden's conviction for escape related to the July 24, 2019 incident. We affirm.

Affirmed.

Riley, J., and Mathias, J., concur.